1833.

HENRIQUES
*v.*
HONE.

---

## HENRIQUES, Receiver, &c. *v.* HONE.(*a*)

Deeds or instruments brought within the statute against fraudulent conveyances are voidable only as to creditors or purchasers who impeach them and are not absolutely void. And when this is done in equity, the decree of the Court is interposed, and, by force of the statute, such decree declares the instrument void *ab initio* as respects those who impeach it and giving to them their legal diligence. But the court does not declare it void as to other persons, nor will it set the same aside as a nullity between the parties to the instrument.

In practice, it is usual to direct a release of the right of a party under a deed, which is set aside as constructively fraudulent. But it will not be necessary to direct a release or reconveyance where a deed is declared an absolute nullity from fraud or imposition in the manner of obtaining it, except under special circumstances and *ex abundanti cautela.*

M. made an assignment. Judgment creditors filed bills to set it aside. They succeeded; and a receiver was appointed. The assignees under the order of the court conveyed all the trust property and rights of M. to the receiver. Previously to the deed being set aside, one of the assignees had placed some of the trust property with H., an auctioneer, to be sold. The latter supposed the goods to be individual property of the assignee, and sold them in the usual way and rendered an account to the latter. Afterwards the receiver applied to H. for the avails and showed his authority. H. now finding the property had belonged to M., who was a creditor at large of his, in a larger amount than the avails of the sale, insisted upon retaining the money as part satisfaction of his debt: HELD, that the receiver was to be considered *de jure*, as well as *de facto*, the assignee of the assignees and not of M. and entitled to the avails and decreed him to pay the same, with interest and costs.

---

*October* 23.
1833.

*Fraudulent Conveyance. Auctioneer. Debtor and Creditor.*

A question of set off. On the eighth day of May, one thousand eight hundred and thirty-two, John Moffat made an assignment of his stock in trade, consisting of dry goods, to Messrs. Hall and, Swan, in trust for the benefit of his creditors; and upon certain conditions specified in the assignment. On the fourth day of June, one thousand eight hundred and thirty-two, Anthony Lenthilon and others, who

---

(*a*) The decree in this case has been affirmed by the Chancellor; and the cause is now before the Court of Errors.

had recovered judgments at law against Moffat and issued executions (returned unsatisfied), filed a bill in this court against him and his assignees, to set aside the assignment as fraudulent, and to have the property applied to the payment of their judgments.

By a decretal order made in the cause, on the twenty-eighth day of January one thousand eight hundred and thirty-three, the assignment was adjudged to be fraudulent and void as to those creditors ; and a receiver was directed to be appointed. The case and the opinion of the court are reported in the first volume of these reports, p. 451.

The complainant, in the present suit, was the receiver appointed by the court; and Messrs. Hall and Swan were directed to assign and deliver over to him all the property, funds and effects mentioned in the assignment, with the proceeds thereof, and which he, the receiver, was to hold for the benefit as well of the complainants in that suit as of all other creditors who had acquired or might acquire a right to payment out of the property, but subject to such further order in relation thereto as the court might thereafter make. Pursuant to this order, Messrs. Hall and Swan executed an instrument of assignment on the eleventh day of March one thousand eight hundred and thirty-three to the receiver of all the property, estate, funds and effects mentioned in the original assignment of the eighth day of May one thousand eight hundred and thirty-two and of the proceeds thereof. Moffat was made a party to this instrument, and also executed it jointly with Hall and Swan. Previously to this time, *i. e.* on the first day of November one thousand eight hundred and thirty-two, while the suit was pending in this court, Mr. Swan, one of the assignees, had placed a parcel of the assigned goods into the hands of the defendant, Hone, as an auctioneer, to be sold. The defendant supposed the goods to be the property of Mr. Swan; he sold them at auction upon the usual terms, on the second day of the same November; and on the sixth of the said month rendered to Mr. Swan an account of the sales, showing the nett amount to be one thousand and sixty-eight dollars : but the proceeds he did not pay over. Afterwards, in the month of March one thousand eight hundred and thirty-three, the receiver

16

called upon the defendant for the money and exhibited his title and authority as receiver, together with an order in writing from Mr. Swan. But the defendant being by this time informed of the goods having belonged to Moffat and that his assignment embracing these goods was set aside for the cause just mentioned, refused to pay over the proceeds and claimed a right to retain the money by way of part satisfaction against Moffat, who was indebted to him in about double that amount upon notes which Moffat had given to him and which were then past due.

Upon this state of facts, the general question was presented to the court: whether the defendant had a right to retain the amount of the sale by way of set-off?

Mr. *F. B. Cutting* for the complainant.

Mr. *W. Kent* for the defendant.

*February* 10. 1834.

THE VICE-CHANCELLOR:—The defendant, as against Messrs. Hall and Swan or either of them, could have no right of set-off at law or in equity. This is well settled. If they had merely been agents or factors of Moffat in placing the goods in the hands of the defendant for sale, the latter must have accounted to them; and in an action for the proceeds, founded upon the privity of contract, he could not have made a set off of the money owing to him by Moffat nor have availed himself of such indebtedness as an excuse for not paying over the full amount: *Toland* v. *Murray*, 18. J. R. 24. and in this court (3. J. C. R. 569.) is a decisive authority to this effect. Upon the same principle, if the receiver has succeeded to the rights of Messrs. Hall and Swan or derives title under them, it is equally certain there can be no set off: for, there being no equity of this sort as between the defendant and Hall and Swan, none can attach to and follow their transfer to him of the claim for the proceeds of the goods as a chose in action. Is there, then, any difficulty in considering the receiver as an assignee of Hall and Swan, standing in their place and having their rights against the defendant? This depends upon the effect of the fraud in the original assignment. If the character of this fraud was such

as to render the assignment utterly void from its creation
and not merely voidable, then, no title passed under it—not
even as between the parties to the same; but, upon its being
set aside, the property would be regarded as having all the
time belonged to Moffat and the title to which had never
been changed.  And, consequently, when taken possession
of by the court and placed in charge of a receiver, the lat-
ter would be vested with a title proceeding immediately
from Moffat (and, of course, subject to all equities existing
against him in favor of third persons) and not mediately
through assignees under a voidable assignment, which might
operate to prevent any such equities from attaching.  The
courts, in carrying into effect the statute against fraudulent
conveyances and giving to it a proper interpretation, have
not felt warranted in proceeding upon any broader ground
with respect to deeds or instruments brought within its pro-
visions as fraudulent, than this : that they are voidable only
as to creditors or purchasers who may think proper to im-
peach them and are not utterly void.  Thus, as against a
fraudulent grantor, the conveyance is effectual to pass the
title, and he and his representatives are not at liberty to set
up a claim in opposition to the deed : *Osborn* v. *Moss*, 7. J.
R. 161.; and for all the purposes of a valid title in a *bona
fide* purchaser under a fraudulent grantee, such grantee is,
in contemplation of law, vested with a legal and perfect es-
tate.  The entire interest and estate of a fraudulent grantor
passes from him by such a conveyance; which would not be
the case if it were a nullity—while the title must vest some-
where, for the law does not permit the fee to be in abeyance.
It vests, by consequence, in the grantee, subject to be di-
vested whenever the creditors or persons aggrieved think
proper to call in question the validity of the transaction and
show the deed or conveyance to be fraudulent.  And when
this is done, the judgment or decree of the court is interpo-
sed, and, by force of the statute, such judgment or decree
declares the instrument to be void and void *in toto* as respects
those who have impeached it and giving to them the benefit
of their legal diligence.  But the court does not declare it
void as to other persons, nor will it set the same aside as a
nullity between the parties to the instrument.  It only acts

1833.

HENRIQUES
*v.*
HONE.

upon it as a voidable deed : but not one as void *ab initio.* This principle clearly appears from the cases of *Anderson* v. *Roberts*, 18. J. R. 515. and *Mackie* v. *Cairns*, 5. Cow. 547. In the last case, one reason why the judgment, which had been confessed by the assignor to the assignees subsequent to the assignment, was held to be ineffectual for any purpose was, that the assignment, although fraudulent as to creditors, was valid as between the parties and, therefore, no lien could attach upon the property assigned by means of the judgment.

So, in *Murray* v. *Riggs*, 15. J. R. 571., where it was considered that a deed, fraudulent as to creditors, was nevertheless capable of confirmation and of being made good by subsequent acts between the grantor and grantees before any steps were taken to impeach it. This could only have been done upon the ground of the title having passed and vested in the grantee and of the deed being voidable only and not absolutely void : for an instrument utterly void and which never had any legal effect is incapable of confirmation.

Upon these principles, it appears to me impossible to consider the title to the assigned property as thrown back upon the assignor Moffat and as taking a new start from him, when the assignment to Hall and Swan was declared void as to the creditors who had taken measures to impeach it. The effect of the decree was only to divest the assignees of their right and control over the property by virtue of the assignment, so as to have the property applied to lawful purposes, namely, to the payment of the debts of the assignor owing to such of his creditors as did not choose to submit to his terms, but who pursued their legal remedies and thereby acquired preferences over others and priorities of payment out of his estate. And this court then takes the property under its own charge through the medium of its officer, a receiver, and appropriates it accordingly.

In practice it is usual to direct a release of the right of a party under a deed which is set aside as constructively fraudulent : *Dey* v. *Dunham*, 2. J. C. R. 194. But it would not be necessary to direct a release or reconveyance where a deed is declared an absolute nullity from fraud or imposition in the manner of obtaining it, except under spe-

cial circumstances and *ex abundanti cautela : Livingston* v. *Hubbs*, 2. J. C. R. 512. This distinction was taken by Lord Loughborough, in *Bates* v. *Graves*, 2. Ves. Jr. 294 ; and it appears to have been observed and acted upon in other cases. The practice upon a decree of requiring a release or conveyance by a person holding under a voidable deed upon setting it aside, shows the understanding to be that the legal title, at least, remains in him and does not return and revest in the original grantor. Hence, the propriety of requiring Messrs. Hall and Swan to execute to the receiver a release or transfer of the property and its proceeds. And I think it follows, as an inevitable conclusion, that the receiver must be deemed *de jure* as well as *de facto* the assignee of Hall and Swan and deriving title under and through them and not immediately from Moffat. The circumstance of his uniting with them in making such transfer does not vary the case. It was, as to him, a matter of form, provided the views I have already taken be correct.

But—supposing the title to the property to have reverted to Moffat and that the receiver takes it as coming directly from him and not through the medium of Hall and Swan, still, it appears to me there would yet be an insurmountable difficulty against allowing to the defendant the benefit of an equity which he now claims. He received the goods from Hall and Swan; and, as already shown, was primarily bound to pay over the proceeds to them. Now, as between Moffat and Hall and Swan, the assignment is still good. Neither of them are at liberty to invalidate it ; and as respects the defendant himself, he has taken no steps towards setting it aside—nor is he in a position to attack the same, on account of not having obtained a judgment against his debtor. And so far from putting himself in the position of a judgment creditor, he appears to have been content to remain a creditor at large and to come in under the assignment for a dividend or dividends upon the terms which the debtor thought proper to prescribe. The defendant admits his never having disputed the validity of the assignment.

Although the assignment may be void as to creditors generally, legal measures are still necessary on their part in order to avoid it ; and he who does not join or concur in

1833.

HENRIQUES
v.
HONE.

proceedings for the purpose and takes no steps to place him-self in a situation to receive a benefit from the debtor's pro-perty, except such as the latter chooses voluntarily to allow, must be deemed as acquiesing.   So long as he does acquiesce he will be bound by any assignment or disposition the debt-or may have made of his property and, for this reason, the assignment from Moffat to Hall and Swan may likewise be considered a valid assignment as respects the defendant Mr. Hone ; and as a part of the assigned property has come to his hands to be disposed of for the purposes of the assign-ment, he cannot, in this collateral manner, set up a claim or right to retain the property or its proceeds in opposition to the title which it apparently confers.

If, upon any principle, Mr. Hone, as a creditor at large, has a right of retainer or set-off, then, clearly, Mr. Swan, who is also a creditor of Moffats', had the same right; and, as between them in relation to the particular sum in ques-tion, Mr. Swan would have the preference : because he was entitled to receive the money from Mr. Hone.   Nor has Mr. Swan waived the right in favor of Mr. Hone.   The order which he gave was for the payment of the money to the re-ceiver ; and not for the purpose of enabling him to compen-sate or set off the debt owing to him by Moffat against the proceeds of the goods in his hands.   In no view of the case has the defendant any right to retain or make the set off.

There must be a decree for the payment of the one thou-sand and sixty-eight dollars, with interest and costs.