### BAKER v. EMERSON et al.

(Supreme Court, Appellate Division, Third Department.   April 14, 1896.)

1. CORPORATIONS—INSOLVENCY—SUFFICIENCY OF EVIDENCE.
   On May 29, 1893, a certain corporation was in debt to the amount of $60,000, mainly for bank discounts, of which $8,500 was past due, $8,500 more was to become due prior to June 5th, and the balance prior to September 6th. Its officers estimated the value of its building, machinery, and stock of goods at about $75,000, but they were afterwards sold for $15,600 at public sale. There was due it, for goods sold and consigned, about $15,-500, but one of the consignees had a large claim against it. Its president, a few days before, stated to a $3,000 creditor that it could not pay the money, but would give him a time draft. *Held*, that on May 29th the insolvency of the corporation was imminent, within Laws 1892, c. 688, § 48, making a payment to a creditor by a corporation which is insolvent, or whose insolvency is imminent, invalid, when made with intent to give a preference.

2. SAME—INTENT TO PREFER—SUFFICIENCY OF EVIDENCE.
   On May 29, 1893, such corporation paid a creditor $3,000, which was not due until June 5th. A few days before, on learning that such creditor would not extend the time of payment, the president stated that he could not pay the money, but would give the creditor a time draft. Its officers knew that it could not meet its obligations in the ordinary course of business, as they became due. On May 31st a suit in behalf of a friendly creditor was brought at the instigation of one or both of the managers, and two days afterwards a suit was brought against the company by the secretary, on a note of $3,000 held by him. *Held*, that the payment of the $3,000 to such creditor was with intent to give a preference, within Laws 1892, c. 688, § 48, providing that any payment made by a corporation, when its insolvency is imminent, with the intent of giving a preference to any particular creditor, is invalid.

Appeal from special term, Washington county.

Action by Frederick I. Baker, as receiver of the Ft. Ann Woolen Company, against Louis Emerson and another, to recover $3,000 paid defendants by such company May 29, 1893, in satisfaction of a debt held by them against it. From a judgment entered on a decision dismissing the complaint, plaintiff appeals.   Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Potter & Lillie, for appellant.
T. D. Trumbull, Jr., for respondents.

MERWIN, J.   The Ft. Ann Woolen Company is a domestic manufacturing corporation, incorporated in 1893, and was engaged in the business of manufacturing woolen goods until June 5, 1893, when

it stopped doing business. Upon that day, attachments to a large amount were levied upon its property. The plaintiff was afterwards duly appointed receiver, and on the 14th May, 1894, brought this action to recover of the defendants the sum of $3,000, which was paid by the company to the defendants on the 29th May, 1893, in payment of a note of the company of that amount held by the defendants. The note was dated February 2, 1893, had been discounted by the defendants for the company, and it became due on June 5, 1893. The claim of the plaintiff is that the payment to defendants was in violation of the provisions of section 48 of chapter 688 of the Laws of 1892. That section, so far as it is important here, is as follows:

"No corporation which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid. Every person receiving by means of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or their trustees."

It was found by the special term that the payment was not made with the intent of giving a preference to the defendants. The plaintiff claims that this finding is not warranted by the evidence. On the 29th May, 1893, the company was in debt to the amount of about $60,000, mainly for bank discounts. Of this there was then past due $8,500, of which $7,000 became due May 19th and $1,500 on May 20th. Protest thereof had been waived. There was also about $8,500 that became due prior to June 5th. The entire indebtedness became due on or prior to September 6, 1893. A few days before the 29th May, Mr. Barnett, the president of the company, was informed that the defendants were not willing to renew the note. He then proposed to give them a draft on Hull & Co., at four months; saying to them that they must get along with that, as he could not pay them money. No arrangement was then concluded. Hull & Co. were dealers in woolen goods at Poughkeepsie, and the company had sent them its goods for sale under a contract brought about by one of the defendants. On this deal, Hull & Co. owed the company on the 29th May about $4,700. On the 28th May one of the defendants and Mr. Hull appeared at Ft. Ann, and on the 29th the note held by the defendants was paid by a draft on Hull & Co. of $3,075, due November 4th, which Hull then and there accepted. Upon the same occasion, Hull & Co. advanced to the company $500, used to pay the pay roll of the week, and a draft of $370 was turned over to Mr. Barnett,—for what purpose does not appear. The balance of the claim of the company against Hull & Co. was settled by allowance for imperfect goods. The other property of the company consisted of its mill and machinery, stock of goods in the mill, and ac-

counts with commission merchants. The mill and machinery, according to the estimate of Mr. Barnett, was of the value of about $50,000; and the stock in the mill, $25,000. A witness for plaintiff estimated the value of the mill and machinery at about $10,000, and that is about what it sold for afterwards, on a public sale under the order of the court. The stock was sold at public sale for $5,600. Of the accounts with commission merchants, there were two representing goods of the company to the amount of about $1,500; and goods had been consigned to Whitman & Phelps, unaccounted for, to the amount of about $14,000. Whitman & Phelps had a large claim against the company, and some of the goods were defective. In Brouwer v. Harbeck, 9 N. Y. 589, 594, it is said:

"A corporation, like an individual, is insolvent when it is not able to pay its debts. 'Insolvency' means a general inability to answer, in the course of business, the liabilities existing and capable of being enforced. Cutten v. Sanger, 2 Younge & J. 459; 2 Bouv. Inst. 157."

The term "insolvency," as used in the bankrupt act, when applied to traders and merchants, has been held to mean an inability of a party to pay his debts as they become due, in the ordinary course of business. Toof v. Martin, 13 Wall. 40. Very clearly, in the present case, to say the least, the insolvency of the corporation was imminent. The further question then is, under the statute, was the payment made with the intent of giving the defendants a preference?

The managers of the company were the president and secretary. Mr. Barnett, the president, testifies that there was no intent to prefer the defendants; that he at that time considered the company solvent, with property enough to pay all its debts, if he could have time to bring it around. Mr. Richmond, the secretary, testified that he did not intend to give the defendants a preference, "if all agreements were carried out." It does not appear what the agreements were that he referred to. A preference was in fact made, in the sense that the defendants received their pay, and other creditors whose debts were due did not. Nor did those whose debts became due afterwards, and before the defendants' note, by its terms, became due. These two classes of debts amounted to about $17,000, and the defendants' debt was, by the act of the officers of the company, placed ahead. This was purposely done, and the officers knew that there were then no available assets to provide for the other debts. In Forbes v. Howe, 102 Mass. 427, 435, under a statute that avoided a sale made with a view to give a preference if the debtor, at the time, was in fact insolvent, although he may not have in fact contemplated insolvency, it was held that the phrase, "with a view to give a preference," should be construed to include "an intent to give one creditor any advantage over others in respect of payment or security of his debt." The same view was taken in Rasin v. Ammidown, 15 Hun, 422. There would seem to be no doubt about defendants' receiving an advantage, and that the company, through its officers, meant it should be so. They knew that the company, with the moneys it then had, could not meet its obligations in the ordinary course of business, as they became due. The company could pay one

debt. It could not then pay all that were due, and it was, to say the least, very doubtful whether it could ever pay all. It gave the defendants the benefit of the certainty. But the managers say, in a qualified way, that they expected to be able to pay all, and therefore there was no intent to prefer. Still, in two days after, and on the 31st May, a suit in behalf of a friendly creditor was brought, at the instigation of one or both of the managers, and on the 2d June a suit was brought against the company by the secretary himself, on a demand note held by him of $3,000. Both of these suits were brought in order to obtain, if possible, a preference, and there had been no change in the affairs of the company after the 29th. This would not look as if the managers, on the 29th, believed in their ability to pay all with the means the company then had. It may be that they expected to get help through Hull & Co., or the defendants, and in some way go on. This, however, would not validate the transaction. Every person is to be presumed to intend the natural and probable consequences of his own acts. The intent to prefer is not rebutted by showing "that the debtor has also another motive to the proceeding, namely, an expectation of pecuniary or other future benefit to himself, by means of further loans of money, and being enabled thereby to continue his business." Denny v. Dana, 2 Cush. 172. In Vennard v. McConnell, 11 Allen, 562, it is said:

"The proposition cannot be maintained * * * that the payment of a debt by a party who is insolvent cannot be regarded as a preference, if made with the hope and expectation by the debtor that he will be able eventually to pay all his debts in full."

See, also, Rison v. Knapp, 1 Dill. 195, Fed. Cas. No. 11,861; Silverman's Case, 2 Abb. (U. S.) 243, Fed. Cas. No. 12,855.

An argument is based on the inconvenience of dealing with a corporation, where, without fault of the creditor, payments may be recovered back. The trouble, if any, in that respect, is with the statute. The validity of the payment is not made to depend on whether it is made in the ordinary course of business, or on whether the creditor has any reasonable ground to believe the debtor insolvent, but simply on whether there is insolvency actual or imminent, and an intent to prefer. Bish. Insolv. (3d Ed.) § 183. If the statute is too severe, the remedy is not with the courts. The undisputed facts in this case show, I think, in substance, an intent to prefer the defendants, and it is no answer to this for the managers to say that they did not mean to do it. They knowingly and purposely did do it. The judgment should, I think, be reversed, on the ground that the evidence does not warrant the conclusion that there was not an intent to prefer.

Judgment reversed and new trial granted; costs to abide the event. All concur.