refusal to obey its order is not dependent upon the provisions of section 2281 or other sections of the Code of Civil Procedure. "It rests upon the relation of the attorney to the court as its officer, and the general control always exercised, founded upon that relation." In re H———, 87 N. Y. 521.

The order should be affirmed.     All concur.

---

(18 App. Div. 427.)

## LOPEZ et al. v. CAMPBELL et al.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. FRAUDULENT JUDGMENTS—SETTING ASIDE INJUNCTION.

An attaching creditor may maintain an action to set aside fraudulent judgments under which executions have been levied, before the issue of his attachment, upon the property on which the attachment is levied, and in such action the sheriff may be enjoined from paying over to the judgment creditors the proceeds of the property levied on. People v. Van Buren, 136 N. Y. 260, 32 N. E. 776, followed.

2. INSOLVENCY—PREFERENCES—JUDGMENTS.

Suffering a judgment to be taken against an insolvent corporation, or one whose insolvency is imminent, may constitute a preference unlawful under section 48 of the stock corporation law.

3. SAME—SETTING ASIDE—DISTRIBUTION OF PROCEEDS—SALE.

Plaintiff, an attaching creditor of the C. Co., brought an action to set aside as fraudulent four judgments against that company, entered before the issue of his attachment, and under which property had been seized which was insufficient to pay the first two judgments. The first two judgments were adjudged void as against plaintiff, his complaint was dismissed as against the other judgment creditors, and the sheriff was directed to pay plaintiff's claim out of the proceeds of the property levied on. Held, that the adjudication of invalidity of the first two judgments as against plaintiff did not affect their validity as against the other judgment creditors, who accordingly were not entitled to be paid before plaintiff out of the proceeds of the property.

4. SAME—ACTION TO SET ASIDE—PARTIES.

An attaching creditor may maintain an action to set aside fraudulent judgments against his debtor, and receive the fruits thereof, without joining other creditors.

Appeal from trial term, Steuben county.

Action by Calixto Lopez and others against Frank Campbell, Charles H. Rowe, the Manufacturers' & Traders' Bank of Buffalo, and the Merchants' & Farmers' Bank of Dansville. The complaint was dismissed, with costs, as to the first two defendants, and plaintiff recovered as against the last two, and all parties appeal. Reversed in part.

This action was commenced on the 5th day of December, 1894, and on the 3d day of December, 1894, plaintiffs obtained an attachment against the goods and property of the defendant the Cohocton Valley Cigar Company, Limited, for $2,712.47. Subsequently, and on the 14th day of February, 1895, the plaintiffs recovered a judgment for $2,730.60 in the action in which their attachment was issued. The Cohocton Valley Cigar Company, Limited, was organized in 1887 to manufacture and sell cigars. Its authorized capital was $15,000, which was increased to $40,000 in 1892, although it does not appear that the increased stock was actually subscribed or issued until some time in 1893. The annual report of 1893 shows the amount of the capital stock then issued to be $15,000. The report filed in 1894 shows the amount of the capital stock actually sub-

scribed was $31,700. Prior to August, 1893, Lighton, a customer of the company, failed, owing the company some $20,000, and of that debt only some $2,300 was subsequently realized. In January, 1894, the Faneuil Hall Company, of Boston, failed, owing the company between $9,000 and $10,000, and the company built a factory which cost between $7,000 and $8,000, which they incumbered for the sum of $5,000. The company became largely indebted, and gave notes representing such indebtedness, which were indorsed by its several directors; and it appears by the evidence that in 1894 they conceived the idea of making large purchases, and making sales with a view of stimulating their credit. In November, 1894, the company was indebted to the plaintiffs in about $6,000. The Lighton claim was settled at 10 cents on a dollar, the company receiving $2,300 in August, 1894, and after that event the creditors seemed to have apprehended the imminent danger of the company failing, and, having learned that it was insolvent, began to press for the payment of their claims; and at about that period the directors seemed to have fully appreciated that the company was insolvent. In November, 1894, its goods, fixtures, accounts, and real estate were of the nominal value of about $20,000, exclusive of accounts against insolvent debtors. Its total indebtedness was something over $66,000. The company made several transfers with a view of liquidating some of the indebtedness against it under unusual circumstances. This action is brought to set aside several judgments mentioned in the complaint, to wit: November 28, 1894, Charles H. Rowe, $416.92; November 28, 1894, M. & F. Bank, Dansville, $5,139.47; November 28, 1894, M. & T. Bank, Buffalo, $7,850.85; November 30, 1894, M. & F. Bank, Dansville, $321.57; November 30, 1894, Frank Campbell, $6,713.88; November 30, 1894, Frank Campbell, $963.65; December 4, 1894, Frank Campbell, $571.34. On the same days on which the judgments were rendered, executions were issued to the sheriff, who made a levy upon all the property of the corporation, and advertised the same to be sold on the 6th day of December, 1894. The plaintiffs' action in which the attachment was issued was commenced on the 3d of December, 1894, and on the 4th of December the attachment was levied upon the property then held by the sheriff under the executions. Thereupon this action was brought to set aside the judgments and execution liens, and an injunction was obtained restraining the sheriff from paying to the execution creditors the proceeds of the sale until the determination of this action. Some of the property was replevied from the sheriff, and the remainder was sold under the executions December 6, 1894, for about $5,000; and pursuant to an order of the court $3,500 of the proceeds of the sale were allowed to remain, and still remain, in the hands of the sheriff to abide the direction in this action. The complaint in this case alleges that all the judgments mentioned therein were suffered by the cigar company with intent to prefer the said execution creditors, and the complaint asks that the judgments and executions be declared void. The cigar company suffered a default, and the other defendants united in an answer asserting the validity of all the judgments and execution liens. The joint answer of the defendants alleges: "That, immediately after said judgments were entered as aforesaid, executions thereon against the property of the judgment debtor were duly issued to the sheriff of the county of Steuben, who immediately seized the property of the judgment debtor thereunder, consisting of cigars, tobacco, fixtures, etc., and levied thereon under said executions, and that the said sheriff refuses to recognize the lien of the plaintiffs' attachment, except as subordinate to that acquired under the judgments and executions aforesaid." The joint answer was verified by the defendant Frank Campbell alone. On the 2d day of January, 1896, the trial judge filed a memorandum of decision in the following language: "That plaintiff is entitled to judgment vacating and declaring null and void, as against these plaintiffs, the judgment recovered by the Manufacturers' and Traders' Bank of Buffalo against the Cohocton Valley Cigar Company, Limited, on the 28th day of November, 1894, and the judgment in favor of the Merchants' and Farmers' National Bank of Dansville, N. Y., against the Cohocton Valley Cigar Company, Limited, for $5,139.47, entered on the 28th day of November, 1894, and the judgment in favor of the Merchants' and Farmers' National Bank of Dansville, N. Y., against the Cohocton Valley Cigar Company, Limited, for the sum of $321.57, and the executions issued thereon. That this decision is based upon the ground that said judgments, and each of them, were suffered

by the Cohocton Valley Cigar Company, Limited, and by its officers and directors, when the corporation was insolvent, or its insolvency imminent, and with the intent of giving a preference to said Merchants' and Farmers' National Bank of Dansville and said Manufacturers' and Traders' Bank of Buffalo over the other creditors of the corporation. That plaintiff is entitled to his costs against the defendants the Merchants' and Farmers' National Bank of Dansville, and Manufacturers' and Traders' Bank of Buffalo, and the Cohocton Valley Cigar Company, Limited. That the defendants Frank Campbell and Charles H. Rowe are entitled to judgment dismissing the plaintiffs' complaint herein, with costs. Let the decree provide that the sheriff may pay to the plaintiffs, from the funds in his hands realized on the executions in favor of said banks, so much as may be necessary to satisfy the amount of their claim, and that the amount so paid be deducted pro rata from the sum applicable upon the execution in favor of said two banks." Judgment in accordance with that decision was entered, and exceptions were filed to the decision by the defendants and by the plaintiffs, so far as it directs judgment dismissing plaintiffs' complaint in favor of Campbell and Rowe. On the 25th of April, 1896, the plaintiffs appeal "from that part of the judgment entered and filed in the above-entitled action on the 28th day of March, 1896, in favor of the defendants Frank Campbell and Charles H. Rowe, or either one of them, dismissing the complaint in this action as to them." The defendant Frank Campbell appeals "from so much of the decree made in the above-entitled action, dated March 28, 1896, and filed and entered in Steuben county clerk's office on the same day, as directs that out of the moneys in the sheriff's hands he, the said sheriff, pay to plaintiffs the sum of $2,730.68, with interest and costs, as in said decree stated." On the 10th of April, 1896, the defendants the Merchants' & Farmers' National Bank of Dansville and the Manufacturers' & Traders' Bank of Buffalo, N. Y., appeal "from the decree rendered in the above-entitled action dated March 28, 1896, and entered in Steuben county clerk's office on the same day, and from the whole of said decree." When the case came on for argument the last above-named defendants filed a stipulation with the clerk to the effect that their appeal be dismissed, and an order will be allowed dismissing the appeal, with costs to the plaintiffs to the date of the filing of said stipulation with the clerk of this court, to be taxed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Rose & Putzel and D. Hays, for appellants.
John F. Parkhurst, for respondent Campbell.

HARDIN, P. J. Doubtless the decision filed was in virtue of section 1022 of the Code of Civil Procedure, which authorizes the court to "state separately the facts found and the conclusions of law, and direct the judgment to be entered thereon, or the court or referee may file a decision stating concisely the grounds upon which the issues have been decided, and direct the judgment to be entered thereon, which decision so filed shall form part of the judgment roll." It seems that the trial judge assumed to follow the second provision of the section of the Code. However, an inspection of it does not reveal that the court stated "concisely the grounds upon which the issues" were decided as to Campbell and Rowe. There are only the general words found in the decision to the effect that the complaint as to them be dismissed. In the absence of the grounds being stated as to them, we have looked into the evidence, and find considerable evidence that would have sustained the plaintiffs' complaint against Campbell and Rowe. Rowe was the attorney that obtained the judgment in behalf of the two banks who have discontinued their appeal, and apparently he had the same information that the banks had at the time they secured their

judgments, which, upon the findings made by the trial judge, have
been declared to be unlawful preferences. The evidence disclosed
that when the settlement in August, 1894, of the Lighton claim, on
which the company only received $2,300, was known, the fact was com-
municated to Campbell, and thereupon he began to press for the pay-
ment of his claims. Reynolds, one of the directors, and its secretary
and treasurer, testified that when the settlement with Lighton was
made the condition of the company appeared to be hopeless, and that
it would be unable to go on in business unless it could raise some ad-
ditional capital. The same fact seemed to have been known to all
the directors, and several steps were taken with a view of protecting
some of the favorite creditors by sales of property in an unusual man-
ner; and the acts, doings, and desires of the company were so conspic-
uous in that direction that the knowledge thereof must have been pos-
sessed by the defendant Campbell prior to commencing the actions in
which he recovered judgments. The notes of the company—some of
them—had gone to protest, and several notes in renewal or extension
were issued by the company after they had been sued with a view of
keeping in abeyance the creditors to whom they were delivered. At
the time of the settlement of the Lighton claim, and thereafter, Camp-
bell held notes indorsed by the directors of the company; and there is
some evidence tending to show that he was co-operating with the other
banks in efforts to obtain advantages in respect to the assets of the
insolvent corporation. Reynolds, the director, secretary, and treas-
urer of the corporation, went to Bath, and while he was there he was
served with summons and complaint in Campbell's suits, and his tes-
timony is somewhat vague as to whether he went to Bath for the pur-
pose of being served or not; and during the month of November he
arranged to give a chattel mortgage to Campbell on his property, and
to have it foreclosed, and the property turned over to Reynolds' wife.
About the same time Reynolds arranged to transfer his real estate
to his wife, and at that time he testifies that Campbell was suffering
an overdraft, and that the company had overdrafts at Campbell's and
the Dansville bank in 1894. Considering all the circumstances dis-
closed in the testimony, it is quite apparent that the company and its
directors were willing to facilitate Campbell's obtaining judgments
upon debts for which the several directors were liable to him as in-
dorsers, and that a scheme existed to facilitate, as well as effectuate,
a desire on the part of the corporation favorable to giving preferences
to Campbell on the indebtedness held by him against the corporation.
It appears by the judgment roll in Rowe's case that his claim, upon
which he recovered, was for services "at the request of the said defend-
ant (corporation) within two years last past." The defendants Camp-
bell and Rowe were in the attitude of insisting that they had liens
upon the goods of the corporation in virtue of their judgments at the
time this action was commenced. To test the validity of such liens, it
was appropriate that they should be made defendants in this action,
to the end that the claim which they set up to the goods might be ad-
judicated. Inasmuch as the trial judge has made no findings of fact
relating to them, we have looked into the evidence and come to the
conclusion that the judgment dismissing the plaintiffs' complaint as to

Rowe and Campbell, with costs, should be reversed.   There is no express finding that the judgments in favor of Campbell and Rowe were valid, nor that their several executions created a lien upon the fund in the hands of the sheriff as against the plaintiffs.

2. This action was brought by the plaintiffs after they had secured a lien, in virtue of their attachment, upon the property of the corporation, and to prevent the property from being applied upon judgments, as to them, fraudulent.   The plaintiffs had "become, in a certain sense, invested with the privileges of a creditor whose debt has been adjudicated valid, and who finds himself embarrassed in its collection by the fraudulent conduct of the debtor."

In the case of People v. Van Buren, 136 N. Y. 260, 32 N. E. 776, the point presented was "of the right of an attaching creditor to prevent the application of the attached property to the payment of a prior lien."   And it was said in that case:

"It must be apparent that, unless such a right exists, the remedy by attachment will be lost in many cases.   The sheriff must sell the property under the prior executions, and apply the proceeds to their payment, and the plaintiff would be in no better condition than if his attachment had not issued.   It would seem to be illogical to accord to the plaintiff the right to attach property fraudulently transferred, as he concededly may, under the decisions in Hall v. Stryker [27 N. Y. 596] and the other cases cited above, and yet deny him the right to have the lien preserved until he can merge his claim in a judgment and issue final process for its collection.   No adequate remedy at law can be suggested in such a case.   The jurisdiction of a court of equity to reach the property of a debtor justly applicable to the payment of his debts, even where there is no specific lien, is undoubted.   It is a very ancient jurisdiction, but will be exercised only when special circumstances exist requiring the interposition of the court to obtain possession of and apply the property.   Such circumstances, we think, are shown to exist here.   The case would be different if executions had not been issued upon the fraudulent judgments.   The mere existence of a fraudulent transfer would not be sufficient to authorize a court of equity to entertain an action at the suit of an attaching creditor to set it aside. But when it is sought to make use of such a transfer for the purpose of removing the attached property from the jurisdiction of the officer who has it in his custody, it is evident that nothing but the equitable arm of the court can prevent the consummation of the wrong."

We think, under the principles laid down in the case to which we have just adverted, the plaintiffs were authorized to maintain this action with the view of removing the fraudulent obstructions upon the property of the corporation which would prevent their realizing upon their attachment.   Bank v. Brewster, 15 App. Div. 342, 44 N. Y. Supp. 54.

Section 48 of the stock corporation law applied to the Cohocton Valley Cigar Company, Limited.   In that section it is provided, viz.:

"No corporation which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash.   No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid.   Every person receiving by means

of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees." Laws 1892, p. 1838, c. 688.

We think the section was properly applied by the trial judge in condemnation of the judgments recovered by the defendant banks.

In French v. Andrews, 145 N. Y. 445, 40 N. E. 215, reference was made to the statute which we have quoted, and it was said:

"The statute has now been changed so that it is no longer permissible to suffer a judgment to be recovered against a corporation of this kind."

The statute has received judicial construction in numerous cases, and we think the authorities now fully sustain the conclusion reached by the trial judge in condemning the judgments which he declared to be fraudulent. Baker v. Emerson, 4 App. Div. 348, 38 N. Y. Supp. 576; Olney v. Baird, 7 App. Div. 96, 40 N. Y. Supp. 202; Milbank v. De Riesthal, 82 Hun, 538, 31 N. Y. Supp. 522; Watch Co. v. Payne (Sup.) 11 N. Y. Supp. 408; Braem v. Bank, 127 N. Y. 508, 28 N. E. 597. The statute expressly authorizes an accounting to be had in favor of the corporation's creditors by every person who received any property of the corporation "by means of any such prohibited act." McQueen v. New, 87 Hun, 206, 33 N. Y. Supp. 802. The adjudication is that the judgments condemned were fraudulent and void as against the plaintiffs, and the filing of the plaintiffs' bill gave them a lien upon the property superior to those judgments. There is no adjudication that the judgments condemned, as against the judgment of Campbell, were void or ineffectual. So far as Campbell's judgments are concerned, they may be said to remain in force, and, that being so, there was not money enough realized by the sale, nor does there money enough remain from the proceeds of the sale, to inure to the benefit of Campbell's judgments. His judgments and execution failed to secure to him a lien upon the property, inasmuch as the prior liens which were valid as to him, he having joined in an answer asserting their validity, were more than sufficient to absorb the property, or the proceeds thereof. The plaintiffs occupy very much the situation they would if the moneys had been paid over to the condemned banks, and their action was for the recovery of the money. Bank v. Townley, 92 Hun, 172, 38 N. Y. Supp. 584; Braem v. Bank, 127 N. Y. 508, 28 N. E. 597. The plaintiffs are authorized to maintain this action in their own behalf, and by their diligence to receive the fruit thereof without joining other creditors. Bartlett v. Drew, 57 N. Y. 587. If this action had not been brought, the sheriff would have been under obligation to pay over the proceeds of the sale in the order of the priority of the executions in his hands. Under such circumstances no moneys would have remained for the defendant Campbell. The rule laid down in section 1406 of the Code of Civil Procedure does not, therefore, come in to aid him in reaching the moneys which have been decreed to be subject to the lien of the plaintiffs. Campbell's execution has become ineffectual to create a lien upon the property in his behalf as against the plaintiffs. Cudahy v. Rhinehart, 133 N. Y. 253, 30 N. E. 1004; Robertson v. Lawton, 91 Hun, 67, 36 N. Y. Supp. 175.

The judgments in favor of the banks, with their executions, were

sufficient to exhaust the personal property, or the proceeds thereof, without reaching his judgment or execution.    By force of the decree herein the money is to be distributed to the plaintiffs, whose diligence has been the means of setting aside, as to them, the judgments in behalf of the banks.    Henriques v. Hone, 2 Edw. Ch. 123.    The executions in favor of Campbell were returned by the sheriff on the 7th of December, 1894, nulla bona, and subsequently, by an order of the special term made in 1896, upon allegations that they were returned inadvertently without the direction of the plaintiff or his attorney, the return was superseded, and the executions were restored to the sheriff. The questions made in regard to the effect of such returns have not been considered, inasmuch as the views already expressed render it unnecessary that the questions relating thereto should be examined.

The foregoing views lead to the conclusion that the following results should be declared:    (1) That the appeal from the judgment taken by the defendants the Merchants' & Farmers' National Bank of Dansville and the Manufacturers' & Traders' Bank of Buffalo should be dismissed, with costs to the plaintiffs on the 25th day of March, 1897. (2) That part of the judgment entered in favor of the defendants Frank Campbell and Charles H. Rowe reversed, with costs.    (3) That "so much of the decree * * * as directs that out of the moneys in the sheriff's hands he, the said sheriff, pay to plaintiffs the sum of $2,730.68, with interest and costs, as in said decree stated," is affirmed, with costs to the plaintiffs against the appellant Campbell.    All concur.