## In re SUPERIOR JEWELRY CO.

(District Court, S. D. New York. December 14, 1916. Additional Opinion, January 12, 1917.)

1. BANKRUPTCY ⬥⟾59—"ACT OF BANKRUPTCY"—FAILURE TO DISCHARGE LIEN.

The failure of an insolvent debtor to discharge a lien obtained through legal proceedings more than four months prior to the filing of a petition in bankruptcy against it, five days before the time fixed for sale of the property thereunder, does not constitute an "act of bankruptcy," although such time of sale was within the four months period.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 81, 82; Dec., Dig. ⬥⟾59.

For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

Additional Opinion.

2. EXECUTION ⬥⟾113—LEVY—DATE OF LIEN—EFFECT OF ANCILLARY PROCEEDINGS.

A petition by an execution creditor, filed in a court of bankruptcy, alleging that the debtor has tangible personal property subject to levy, but that such levy cannot be made because the property is in possession of a trustee in bankruptcy in another proceeding, and praying that it be released, is equivalent to a bill in equity to remove an obstruction to the levy, and may be maintained, although the execution has not been returned nulla bona, and where the petition is granted, and the property surrendered, the lien of the subsequent levy thereon relates back to the time of the filing of the petition.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 241–248; Dec. Dig. ⬥⟾113.]

In Bankruptcy. In the matter of the Superior Jewelry Company, alleged bankrupt. On motion to confirm report of referee recommending dismissal of petition. Report confirmed, and petition dismissed.

See, also, 232 Fed. 194.

The facts have been stipulated as follows:

"1. That the Superior Jewelry Company is a New York corporation, having been incorporated on or about the 2d day of May, 1914, and that its last office for the transaction of business was at 87 Nassau street, in the borough of Manhattan, city of New York.

"2. That heretofore, and on or about the 15th day of February, 1916, Messrs. Teitelbaum & Whitebook, the answering creditors, recovered judgment against the above-named alleged bankrupt in the sum of about $832.53, in the City Court of the City of New York, which is a court of record.

"3. That thereafter, and on or about the 15th day of February, 1916, an execution was issued out of said court, to the sheriff of the county of New York, against the property of the above-named alleged bankrupt on the judgment above mentioned, and the sheriff returned the said execution nulla bona on April 14, 1916.

"4. That prior thereto all the property of Superior Jewelry Company, consisting of jewelry, subject to levy within the county of New York, had been taken possession of by Nathan Hutner, as trustee of Louis Goldberg and Herman Sagman, adjudicated bankrupts in this court, and said property was in his possession on the 15th day of February, 1916, and up to and including the 27th day of September, 1916, when the sheriff of New York county took possession thereof pursuant to the order hereinafter mentioned.

"5. That on or about March 6, 1916, Messrs. Teitelbaum & Whitebook, the answering creditors herein, filed a petition in this court, praying that the

said property, belonging to the alleged bankrupt, be released from the custody of Nathan Hutner, the trustee of Goldberg & Sagman, and such proceedings were thereafter had that an order was entered in this court, made by Hon. Stanley W. Dexter, referee, on the 25th day of August, 1916, requiring the said trustee to relinquish possession of said property, and permitting the sheriff of the county of New York to make a levy upon said property so relinquished to satisfy the judgment of the answering creditors against the Superior Jewelry Company above referred to. ,

"6. That the sheriff of New York county, pursuant to said order, made a levy on said property, on or about the 27th day of September, 1916, and advertised said property for sale for October 4, 1916.

"7. On October 4, 1916, before the sale was effected, the petition in bankruptcy herein was filed on behalf of the petitioning creditors.

"8. The alleged bankrupt did not, within five days prior to the date set for the sale of its property, vacate the judgment or lien affecting the same.

"9. For the purpose of bringing up for decision the question relating to the alleged act of bankruptcy alone, it is conceded that the Superior Jewelry Company was insolvent on February 15, 1916, and continued so to be up to and including October 4, 1916."

David Haar, of New York City, for the motion.
Saul H. Immergluck, of New York City, opposed.

MAYER, District Judge (after stating the facts as above). The motion is to confirm the report of the referee in bankruptcy, who has recommended that the adjudication in bankruptcy be denied and the petition dismissed. The sole act of bankruptcy alleged is that:

"The above-named alleged bankrupt, within four months next preceding the filing of this petition, permitted, while insolvent, a creditor to obtain a preference through legal proceedings, and did not, five days before a sale of the property affected by such preference, vacate or discharge same."

[1] The petitioning creditors contend that, irrespective of the time when the lien was acquired by Teitelbaum & Whitebook, the act of bankruptcy was committed five days before the day upon which the sale was advertised to take place. In other words, the argument is that, even though the judgment was suffered outside of the four months period, and the lien attached outside of the four months period, the claim of the creditor can be defeated because the sale took place, or was about to take place, within the four months period, and the bankrupt did not vacate the sale nor discharge the preference. This, in my opinion, is not the law. The statute did not contemplate that the judgment obtained by a diligent creditor prior to the four months period, and the lien obtained likewise prior to the four months period, should be defeated merely because it was not possible to have the sale take place earlier than some date which fell within the four months period.

The sole question, therefore, is as to when the lien of Teitelbaum & Whitebook attached. It is quite clear that no lien attached as the result of the first execution, which, in due course, was returned unsatisfied. If the judgment creditors had an equitable lien prior to the four months period, then the second execution was, as the referee has held, "merely for the purpose of enforcing a pre-existing lien, unaffected by the subsequent bankruptcy." This leads to the final in-

quiry as to the legal quality of the petition of these judgment creditors, in which, on or about March 6, 1916, they sought to reach property of the judgment debtor (Superior Jewelry Company, Incorporated) then in the possession of Hutner as trustee of Goldberg & Sagman.

The referee has annexed to his report on adjudication a copy of his opinion in this application in the Goldberg & Sagman bankruptcy and has referred to the opinion of Judge Learned Hand (232 Fed. 194) in pursuance of which the subject-matter was remanded to the referee for further proceedings. By referring to the opinion of Judge Learned Hand it will be seen that he called attention to the failure of the petition to allege the return of the execution unsatisfied under the Teitelbaum & Whitebook judgment. The referee states that "the petition has been amended so as to allege the return of the execution unsatisfied," but he does not state when the petition was amended, and this may be an important point in determining whether the petition as amended may be regarded by analogy as a bill in equity, and, if so, the date when the equitable lien attached. While counsel have agreed that I may examine the papers in the Goldberg & Sagman proceeding, such a method is unsatisfactory, and I am unable, from the stipulation as to the facts, to determine the precise nature of the petition.

The matter will be returned to the referee for the purpose of making so much of the proceeding in the Goldberg & Sagman bankruptcy as is here relevant a part of this record, or, at the option of counsel, they may stipulate these facts and papers into the record before me, in order to avoid further expense and delay by returning the matter to the referee.

## Additional Opinion.

[2] In an opinion filed December 14, 1916, I pointed out that it was necessary to have a further stipulation before it was possible to determine what was the effect in law of the petition of March 6, 1916. This stipulation has now been submitted and is a part of the record.

The petition of March 6, 1916, set forth the following: That on February 15, 1915, Teitelbaum & Whitebook obtained a judgment against Superior Jewelry Company, Incorporated, and Goldberg & Sagman, for $832.53; that execution on said judgment had been issued to the sheriff of the county of New York, but had not as yet been returned by him; on information and belief, that the trustee in bankruptcy of Goldberg & Sagman took possession of property which belonged to Superior Jewelry Company, Incorporated, and that this property consisted of various pieces of jewelry and diamonds; that Sagman, who was an officer of Superior Jewelry Company, Incorporated, had taken over all of the assets of Superior Jewelry Company, Incorporated, and that this transfer was without authority, without consideration, and without notice to creditors; that three days after this transfer from Superior Jewelry Company, Incorporated, to Goldberg & Sagman, a petition in bankruptcy was filed against Goldberg

& Sagman, and that the merchandise in question was in a vault of a safe deposit company.

The petition asserted that the trustee of Goldberg & Sagman had no right, title, or interest to the property and should be required to relinquish possession thereto either to Superior Jewelry Company, Incorporated, or to the sheriff of the county of New York, so as to permit the sheriff to make a levy under the execution filed with him on petitioner's behalf, and the petition asked for an order directing the trustee to relinquish possession of these assets of Goldberg & Sagman, either to the Superior Jewelry Company, Incorporated, or to the sheriff of the county of New York.

It will thus be seen that, at the time of the issuance of the execution, there was in existence the kind of property subject to execution and levy, if that property had been in the possession of Superior Jewelry Company. The sheriff, however, was unable to make such levy because the property was in custodia legis—an obstruction which it was necessary to cause to be removed before the sheriff could make his levy.

The referee dismissed the petition, but, on review, Judge Learned Hand held the petition good. Matter of Goldberg & Sagman, 36 Am. Bankr. Rep. 736, 232 Fed. 194. Judge Hand said:

"Any court, whether or not it be one of bankruptcy, having acquired jurisdiction of a fund for distribution, will prevent suits elsewhere, and draw to itself the decision of all questions arising in its disposition. * * * This is a proceeding strictly analogous to ancillary dependent bills in equity, arising where the court has sequestered corporate assets for distribution."

The order of the referee was reversed, and the cause remanded for further proceedings, with the observation:

"The petition is within the competence of the referee, to be disposed of on the merits precisely as though it were an original bill in equity before a court of competent jurisdiction."

The matter having thus been returned to the referee, he held, in an opinion dated August 21, 1916, that the prayer of the petition should be granted, and that the trustee of Goldberg & Sagman "should relinquish title to the property and allow the sheriff to make a levy." An order accordingly was made by the referee on August 25, 1916, which was later affirmed by the District Court. On July 28, 1916, counsel on behalf of Teitelbaum & Whitebook, the petitioner, stated that the sheriff has made a return of the execution under the Teitelbaum & Whitebook judgment, and "the return shows it has been unsatisfied, dated April 14, 1916, and that it was nulla bona against the Superior Jewelry Company."

The order of the District Court, affirming the order of the referee, requiring the trustee of Goldberg & Sagman to relinquish the property and to permit the sheriff to make his levy, was dated September 19, 1916. The sheriff made his levy on September 27, 1916, and advertised the property for sale for October 4, 1916; but on October 4, 1916, and before the sale was effected, the petition in bankruptcy

against Superior Jewelry Company, Incorporated, was filed on behalf of the petitioning creditors, who here press for an adjudication against said alleged bankrupt.

From the foregoing it will be noted that the amendment to the petition setting forth the return of the execution unsatisfied was made within the four months period, to wit, on July 28, 1916, whereas, the original petition was filed on March 6, 1916, outside of the four months period.

Judge Learned Hand had already decided that the procedure was correct, and had treated the petition as in the nature of a bill in equity, analogous with ancillary dependent bills arising where the court has sequestered corporate assets for distribution. The order subsequently of the District Court, affirming the order of the referee, requiring the relinquishment of the property so as to permit the sheriff's levy, stands unassailed, and thus the sole question remaining in the case is whether, in order to obtain a lien, it was necessary that the original petition should have contained the allegation that the execution had been returned unsatisfied—an allegation, of course, impossible to make, because at that time the execution had not been returned.

If such allegation were necessary, I am inclined to think that the amendment would not have helped, because in such event the return of the execution unsatisfied was necessary before the filing of the petition of Teitelbaum & Whitebook against the trustee of Goldberg & Sagman could operate as a lien.

Preliminarily, it must be remembered that the property, consisting of diamonds and jewelry, was of a character susceptible of levy. The assets in question were not equitable assets. The principles involved may be stated thus: If the debtor has not any tangible assets subject to levy, the judgment creditor can reach equitable assets; but, in such situation, execution must be returned unsatisfied, to show that the remedy at law has been exhausted. If, on the other hand, the debtor has tangible assets subject to levy, but there is some obstruction which must first be removed before levy can be made, the judgment creditor may file his bill in equity, or take some other appropriate proceeding analogous therewith, where the execution has not been returned. Chancellor Walworth, in Beck v. Burdett, 1 Paige's Ch. 305, at page 308 (19 Am. Dec. 436), discussed the principles here concerned, as follows:

"There are two classes of cases where a plaintiff is permitted to come into this court for relief, after he has proceeded to judgment and execution at law without obtaining satisfaction of his debt. In one case the issuing of the execution gives to the plaintiff a lien upon the property, but he is compelled to come here for the purpose of removing some obstruction fraudulently or inequitably interposed to prevent a sale on the execution. In the other, the plaintiff comes here to obtain satisfaction of his debt out of property of the defendant, which cannot be reached by execution at law. In the latter case, his right to relief here depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction of his judgment. In the first case, the plaintiff may come into this court for relief, immediately after he has obtained a lien upon the property by the issuing of an execution to the sheriff of the county where the same is situated; and, the obstruction being

removed, he may proceed to enforce the execution by a sale of the property, although an actual levy is probably necessary to enable him to hold the property against other execution creditors or bona fide purchasers. Angel v. Draper, 1 Vern. 399, and Shirley v. Watts, 3 Atk. 200, are cases of this description. In the first, a fraudulent assignment was interposed to prevent a sale of the defendant's property on execution; and in the last case it became necessary to redeem a term for years in a leasehold property from a lien of a prior mortgage. In both these cases, the plaintiffs were allowed to come into equity for relief, before the executions were returned unsatisfied. McDermutt v. Strong, 4 Johns. Ch. 687, belongs to the other class of cases; for, although an attempt was made to levy the execution upon the defendant's interest in the vessel assigned, it is clear he had no interest which was a proper subject of seizure and sale on the execution. The issuing of an execution, or even a formal levy, can create no lien upon a chose in action, or a mere equitable interest in personal property, which is not liable to be sold on execution. In such cases, the actual return of the execution unsatisfied is necessary to give this court jurisdiction to decree satisfaction out of the equitable property of the defendant. Such is the construction recently adopted by the Legislature in such cases. R. S. pt. 3, c. 1, tit. 2, § 38. And a similar principle is adopted in that part of the Revised Statutes which enables creditors to reach the equitable interest of persons holding lands under contracts for the purchase thereof. R. S. pt. 2, c. 1, tit. 4, § 4. In all these cases, where the property is not liable to an execution at law, the plaintiff obtains no lien upon the property or fund, by the issuing or return of the execution. But it is the filing of the bill in equity, after the return of the execution at law, which gives to the plaintiff a specific lien. Per Lord Hardwicke in Edgell v. Haywood, 3 Atk. Rep. 357."

In Home Bank v. Brewster & Co., 15 App. Div. 338, 44 N. Y. Supp. 54, Mr. Justice Williams said:

"The plaintiff, by such judgments and the issue of executions thereon, secured liens upon the property of the corporation, then within the city and county of New York, and a preference in the payments of its judgments therefrom over other creditors of the insolvent corporation. The issue of the executions created liens upon such property of the corporation, even though no actual levy was made. Code Civ. Proc. § 1405. The plaintiff pursued its remedy by the recovery of its judgments and the issue of its executions, and, at the time the executions came into the hands of the sheriff, there was considerable property belonging to the corporation in the city and county of New York, but it could not be levied upon by the sheriff by reason of the existence of these fraudulent transfers, mortgage and general assignment. Two remedies were then open to the plaintiff. It might have awaited the return of the executions unsatisfied, and then have brought an action to sequester the property of the corporation under section 1784 of the Code of Civil Procedure, and have had such transfers, mortgage, and general assignment set aside, and thus have reached the property so transferred, mortgaged, and assigned for the satisfaction of its judgments,' and in such action it might have had the relief, by way of appointment, of a receiver, seizure of all the property of the corporation, accounting by the defendants, and injunction; but in such an action against an insolvent corporation all the creditors of the corporation would have been entitled to come in and share equally with the plaintiff in the distribution of the property and assets of the corporation. Code Civ. Proc. § 1793. The general provisions of the Code, with reference to judgment creditors' actions, do not apply to such an action. Section 1879. Such an action, however, could not have been maintained, except upon the return of an execution unsatisfied in whole or in part (Code, § 1784), and there was no such return in this case. The plaintiff saw fit to bring this action in equity, based upon the issue of its executions and the liens secured thereby upon the property of the corporation, then actually within the city and county of New York, and seeking to remove the fraudulent transfers, mortgage, and

assignment, so far as they were clouds upon the title of the corporation to the property, in order that the plaintiff might then proceed to levy its executions upon such property and sell the same for the satisfaction of its judgments. This action was well and properly brought." [1]

Section 1405 of the New York Code, to which reference is made in the above-quoted opinion, reads as follows:

"Sec. 1405. *Personal Property Bound by Execution.*—The goods and chattels of a judgment debtor, not exempt, by express provision of law, from levy and sale by virtue of an execution, and his other personal property, which is expressly declared by law, to be subject to levy by virtue of an execution, are, when situated within the jurisdiction of the officer, to whom an execution against property is delivered, bound by the execution, from the time of the delivery thereof to the proper officer, to be executed, but not before."

In view of these authorities and Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, and Freedman's Savings & Trust Co. v. Earle, 110 U. S. 710, 4 Sup. Ct. 226, 28 L. Ed. 301, it seems to me sound, on principle, to hold that the petition of March 6, 1916, set forth facts which would have been sufficient to sustain a cause of action in equity for the relief asked for in the petition. Obviously, there was nothing else which the judgment creditor could do. He moved diligently to cause to be removed the obstruction which prevented the sheriff from making a levy on tangible assets, and, if the lien was good as of March 6, 1916, then, under Metcalf v. Barker, supra, the levy of September 27, 1916, was good. It may be further observed that the statutory four months preference period was not incorporated in the bankruptcy statute in order to defeat diligent creditors, who, at arm's length, pursue their remedies; and where, as here, prior to the four months period, judgment creditors have done everything which was in their power to do, equity will be keen to assist them and safeguard their rights, for it must not be forgotten, as was said in Bardes v. Hawarden Bank, 178 U. S. at page 535, 20 Sup. Ct. 1000, 44 L. Ed. 1175:

"Proceedings in bankruptcy generally are in the nature of proceedings in equity."

As the sole allegation in respect of the act of bankruptcy was that the alleged bankrupt "within four months next preceding the filing of this petition permitted while insolvent a creditor to obtain a preference through legal proceedings, and did not five days before a sale of the property affected by such preference vacate or discharge same," it follows, in view of this and my previous opinion, that the conclusion of the referee was right and that the adjudication in bankruptcy must be denied, and the petition dismissed.

[1] This case was cited in Lopez v. Merchants' & Farmers' Nat. Bank, 18 App. Div. at pages 434, 435, 46 N. Y. Supp. 91; Koechl v. Leibinger & Oehm Brewing Co., 26 App. Div. at page 579, 50 N. Y. Supp. 568, and especially see Stetson v. Hopper, 60 App. Div. 277, 70 N. Y. Supp. 170.