(38 App. Div. 94.)          •

HILTON v. ERNST. et al.

(Supreme Court, Appellate Division, Second Department, February 7, 1899.)

1. CORPORATIONS—FRAUDULENT CONVEYANCES—PREFERENCES—EVIDENCE.
Officers of a corporation, fully advised of the company's insolvency, consulted with counsel as to obtaining a receiver, and, while schedules were being prepared, it made several assignments to certain creditors, the receiver being appointed three days after the last assignment. *Held* to show an intent to prefer such creditors.

2. SAME—SECURITY—SUBSTITUTION.
An insolvent corporation assigned an account as security for a contemporaneous loan, expressly agreeing to turn over to the lender any amounts which it might collect on the account. The corporation collected part of the account, and, failing to pay over the proceeds, it subsequently assigned other accounts to the lender. *Held*, that the last assignment was invalid under Stock Corporation Law, § 48 (Laws 1890, c. 564, as amended by Laws 1892, c. 688), invalidating the transfer of any property of an insolvent corporation with intent to prefer a creditor.

Appeal from judgment on report of referee.

Action by William H. Hilton, as receiver of the Kilmer Manufacturing Company, against Morris L. Ernst and another. From a judgment for plaintiff, entered on the report of a referee, defendants appeal. Affirmed.

The following is the opinion of the court below (WILLIAM VANAMEE, Referee):

This action is brought by the receiver of a stock corporation to compel the defendants, who are creditors of the corporation, to account to him, for the benefit of all the creditors, for the property of the corporation transferred to the defendants by an act of preference prohibited by the statute. Section 48, Stock Corporation Law (Laws 1890, c. 564, as amended by Laws 1892, c. 688), forbids and invalidates the transfer of any property of such a corporation when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation. While it will always seem hard to an individual creditor to be required to restore property which he has, either by favor or by diligence, secured from an insolvent corporation for the purpose of applying it upon a just debt, still this is the very result which it is the design of the statute to accomplish. The statute constitutes an assurance to all who deal with the corporation that, in case it becomes insolvent, no creditor will be permitted to acquire a preference over other creditors, in the distribution of its assets. It distinctly notifies all the creditors that diligence will not be rewarded, nor favor ratified. In these circumstances, it would be grossly unfair to allow one creditor to retain the property of an insolvent corporation, acquired in disregard of the statute, which another might equally have secured if he had not regarded, and had not been warned off by, the statute. The courts will not hesitate to enforce the restitution provided for by the statute, whenever the facts clearly fall within its terms. In this case the insolvency of the Kilmer Manufacturing Company as early as October 10, 1895, and at the time of all the assignments made in that month, is established by the evidence. The intent by the officers of the corporation to give to the defendants a preference in making these assignments is entirely clear. They were fully advised of the desperate condition of the affairs of the company, and had consulted with counsel in relation to the necessity of obtaining the appointment of a receiver. Schedules and inventories were in course of preparation at the time the assignments were made, and the officers of the corporation were complaining that their counsel was too slow in securing the appointment of a receiver. This delay, due to the magnitude of the labor involved, alone made these assignments possible. The receivers were

appointed October 22, 1895, three days after the last assignments to the defendants. The assignments were of accounts of the corporation against its customers for goods sold to them. Similar assignments had been taken by the defendants from the company, extending over a period of several months, as security for loans made by the defendants. In every instance, except at the time of the last two assignments, notes were given by the company to represent the indebtedness. The defendants therefore occupied the position of creditors of the company. Upon the 10th day of October, 1895, the defendants advanced to the company the sum of $1,800, taking as security an assignment of accounts, upon which they have realized the sum of $2,130.23, leaving a balance in their hands of $330.23, which does not represent any consideration advanced at the time of the assignment. This balance and the amounts collected under the assignments of October 16th and October 19th, when no advances whatever were made, the defendants seek to apply upon the indebtedness growing out of the collection and conversion by the Kilmer Manufacturing Company of an account against the New Haven Wire-Manufacturing Company, assigned by the Kilmer Company to the defendants. Upon the 10th day of October, 1895, the Kilmer Company assigned to the defendants an account against the New Haven Wire Company of $8,488.96. Upon the same day the agent of the Kilmer Company collected of the New Haven Company $5,000 of this account. Upon ascertaining this, the defendants applied to the Kilmer Company for other security, and the assignments of October 16th and October 19th were of other accounts in response to this application. The defendants justify these assignments, and assert their right to hold the fruits of them, upon the ground that, as they were made to take the place of accounts that had been previously assigned as security for loans, and which had been unlawfully collected by the company, such assignments do not constitute a preference within the meaning of the statute; that they were simply a carrying out of the original agreement to furnish security for the loans. It is difficult to see how the application of the statute can be avoided upon this ground. It would apply just as well to a preference made to secure any other ordinary debt, for that also would simply be the carrying out of the original agreement to pay the debt. Besides, the debt which it was sought, under these assignments, to secure, assumes a new form. It becomes a claim founded in tort admitting of an election of remedies. There certainly was no original agreement as to how the results of the tortious act should be dealt with. The defendants found themselves with a new remedy against the officers of the corporation which gave them certain advantages over other creditors. The whole effect of the argument for the defendants is that a creditor may voluntarily surrender any additional remedy against the officers of an insolvent corporation in exchange for the property of the corporation transferred to the particular creditor to the exclusion of the creditors at large. It is one of the wholesome results of the statute that the officers of an insolvent corporation shall not be permitted to purchase immunity for themselves by transferring the property of the corporation to a creditor who might otherwise pursue them individually. The point urged by the defendants that a security will be sustained if given after insolvency in cases in which money was advanced upon the strength of it, though its actual execution was deferred, has no application to the facts of this case. There was no agreement between the parties to substitute other accounts for accounts collected by the company. On the contrary, the agreements signed by the Kilmer Company contained a special agreement to turn over any assigned accounts collected by them to the defendants forthwith. It was this obligation which the Kilmer Company violated, and it was to prefer the debt thus created that the assignments of October 16th and 19th were given. The defect in the argument of the defendants is that it seems to regard as possessing peculiar sacredness, and entitled to special favor, a claim growing out of a wrongful act. The statute makes no such distinction. So far as the other creditors were concerned, it was still a simple debt. Whether we regard the debt as a recent one, growing out of the tortious act, or whether we regard the assignments as a substituted security upon the original debt, in either case the transfer of the corporation property after the insolvency of the corporation falls within the prohibition

of the statute. The amount collected by the defendants under the invalid assignments of October 16th is $497.04, and under that of October 19th $785.-97, making, with the amount of $330.23, before referred to, $1,613.24. The defendants are entitled to a credit for $155.04, due to them from the plaintiff, as receiver, making the amount which the plaintiff is entitled to recover from the defendants the sum of $1,458.20, with interest from the commencement of the action.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

A. J. Dittenhoefer, for appellants.
Charles F. Brown, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of ref-eree.

---

(29 Civ. Proc. R. 67; 27 Misc. Rep. 23.)

### TINKER v. CITY TRUST, SAFE-DEPOSIT & SURETY CO. OF PHILADELPHIA.

(Supreme Court, Special Term, New York County. March, 1899.)

BAIL—RECONVEYANCE OF SECURITY—ACTIONS—DEFENSES.

In an action to compel a surety on a bail bond to reconvey property conveyed to him as security against liability, a defense that under Code Civ. Proc. § 385, prescribing a limitation of a year against a sheriff on a liability incurred by him, it could not be determined that there would be no liability on the bond until the expiration of the year, is unwarranted, where the time for which the judgment debtor could be imprisoned, under Id. § 111, had expired, the prisoner was within the limits on the date of its expiration, and no action was then pending against the sheriff for an escape.

Action by Matilda G. Tinker against the City Trust, Safe-Deposit & Surety Company of Philadelphia. Judgment for plaintiff.

Nelson Smith, for plaintiff.
Dayton & Swift, for defendant.

BOOKSTAVER, J. This is an action to compel the defendant company, the surety upon a bail bond, to reconvey to the plaintiff property conveyed to it by her to be held as security against its liability upon such bond. It is conceded that the judgment debtor was arrested on July 12, 1897. The statute (section 111, Code Civ. Proc.) permits imprisonment within the jail limits of any jail for a period of only six months. That period expired on the 12th day of January, 1898, on which date it is undisputed that the prisoner was within the limits, and that no action was then pending against the sheriff for an escape. The defendant takes the position that, under section 385 of the Code of Civil Procedure, which prescribes a limitation of one year for "an action against a sheriff or coroner, upon a liability incurred by him, by doing an act in his official capacity, or by the omission of an official duty," it could not be determined that there would be no liability upon the bail bond until the year so prescribed should have passed without action begun against the sheriff. This argument loses sight of the fact that on the last day of the period of six months the prisoner was within the limits, and the rule of law that, where an escape has been