ARTHUR Y. DALZIEL, as Trustee in Bankruptcy of SELZ-
NICK DISTRIBUTING CORPORATION, Appellant, *v.* WIL-
LIAM L. ROSENFELD, Respondent.

(Argued May 29, 1934; decided July 3, 1934.)

*Sam L. Cohen* and *Felix A. Fishman* for appellant.

*Harris Berlack, Stanley H. Fuld* and *Frank Aranow* for respondent.

CROUCH, J. The plaintiff sued under section 15 of the Stock Corporation Law (Cons. Laws, ch. 59) to recover the amount of alleged preferential payments made by the bankrupt to the defendant.

At the close of the plaintiff's case the complaint was dismissed upon the ground that the plaintiff had failed to make *prima facie* proof: (1) Upon the issue of notice or belief on the part of the defendant that the payments would effect a preference; and (2) upon the issue of plaintiff's intent to give a preference to defendant.

The payments in question were made in 1924. As section 15 of the Stock Corporation Law then stood, recovery could be had when it was shown that the prohibited act occurred while the debtor corporation was insolvent or its insolvency was imminent; and that there was an intent thereby to give a preference. No proof of the creditor's knowledge or state of mind was necessary.

In 1929 the section was amended (Laws of 1929, ch. 653) so as to protect the rights or interests of creditors acquired without notice or reasonable cause to believe that the act of the debtor would effect a preference.

In ruling on the first issue the courts below have held that the amendment of 1929 was retroactive and hence that the failure of the plaintiff to show notice or reasonable cause to believe on the part of the defendant that the payments would effect a preference was fatal.

We find no satisfactory legal reason to support that holding. " The general rule is that statutes are to be construed as prospective only. It takes a clear expression of the legislative purpose to justify a retroactive application." (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240.)

If we look to the literal language of the amendment, we find reference only to " rights or interests which *may be* acquired "— words importing futurity as unmistakably as " shall be " (*Sanford* v. *Bennett*, 24 N. Y. 20) or as " shall hereafter." (*Matter of D. & H. Canal Co.*, 129 N. Y. 105, 113.) If, going beyond the language used, we seek a reason for it, a consideration of the effect of retroactive operation furnishes such reason.

The purpose of section 15 as it stood prior to the amendment was to secure equality in the distribution of the assets of a failing corporation. (*Hilton* v. *Ernst*, 38 App. Div. 94; affd., 161 N. Y. 226.) That purpose seemed to require that no account be taken of the honesty or good faith of the creditor preferred; no transfer, except to a *bona fide* purchaser, was to be protected. It must be assumed that all creditors dealt with corporations upon the faith of that equality. To the extent that they acted upon that faith they acquired vested rights. If the amendment were to be construed retroactively, such rights would be impaired. Entirely apart from any question of constitutionality, no intent with such consequences will be imputed to the Legislature. (*Addiss* v. *Selig*, 264 N. Y. 274.) The purpose of the amendment,

prospective merely, was to conform the statute "to the conceptions underlying the Bankruptcy Act, better adapted no doubt to the fluidity of financial dealings." (*Matters* v. *Manufacturers' Trust Co.*, 54 Fed. Rep. [2d] 1010, 1016.) (Cf. Bankruptcy Act, § 96-b; U. S. Code, tit. 11, ch. 6; § 96-b; 30 Stat. 562.)

Upon the second issue, also, we are disposed to think that the courts below were in error. As the record stood at the close of the plaintiff's case, there was adequate evidence to warrant an inference of preferential intent. Without going into detail, it is reasonably clear that as early as March, 1924, the financial affairs of the corporation were in a serious condition — so serious that it seemed wise to its officers to set up what the respondent's own brief refers to as a "buffer corporation," to which upon bankruptcy or insolvency its distribution business could be transferred. From that time on it could be found that matters progressed from bad to worse, with bankruptcy supervening in October, 1924 — which seems to have been about the anticipated date. If, during the months from May to October when the questioned payments were made, bankruptcy was not inevitable, it was at least the natural, probable and only forseeable end, or at least a jury could so find. Knowing so much, the officers of the corporation who made these payments also must have known what their effect would be. If the gods did not actually frown, their faces were at least inscrutable. But that was not enough. (*Matters* v. *Manufacturers' Trust Co.*, *supra*, p. 1014.)

The judgment should be reversed and a new trial granted, with costs to the appellant in all courts to abide the event.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and LOUGHRAN, JJ., concur.

Judgment reversed, etc.