Louis Kronowitz and Another, Doing Business under the Trade Name and Style of Standard Baking Company, Plaintiffs, v. Abraham Schlansky, as President, or "William Jones," as Treasurer, of Bakery and Confectionery Workers International Union of America, Local 505, Defendants.

Supreme Court, Kings County, August 28, 1935.

*Milton M. Eisenberg* [*Milton M. Eisenberg* and *Ralph Weller* of counsel], for the plaintiffs.

*Matthew M. Levy* [*Matthew M. Levy* of counsel, *Benjamin Mandelker* and *David Halper* on the brief], for the defendants.

STEINBRINK, J.    Here is presented a motion to punish defendants for contempt in having violated the injunctive provisions embodied in a final judgment dated September 17, 1934, in a suit arising out of a labor dispute.

Under one of the recently enacted labor injunction statutes (Civ. Prac. Act, § 876-a, subd. 8, added by Laws of 1935, chap. 477, in effect April 25, 1935) preliminary objection was made to the court entertaining the motion, defendant's counsel urging that the injunction had lapsed since more than six months had passed since it was issued.    This contention is unsound and, therefore, dismissed for reasons which need only be briefly stated.    The judgment embodying the injunction having been granted prior to the enactment, the rights thereby vested in plaintiffs could not be destroyed by legislative act.    The statute under consideration failing to indicate a contrary interpretation will have prospective application only.    (*Dalziel* v. *Rosenfeld*, 265 N. Y. 76; *Walker* v. *Walker*, 155 id. 77.)    The last cited case makes clear that the Legislature may not pass a statute annulling, varying or modifying a past judgment.    Plaintiffs' counsel attacks the statute, asserting that if it were found applicable it was nevertheless invalid because of the time limit of its effectiveness.    If the Legislature may lawfully provide that a judgment shall be valid for twenty years and remain a lien on real property for only ten years, I know of no reason why the effect of an injunction may not reasonably be limited.    It is conceivable that a ridiculously short limitation might be held to be no limitation at all, but rather denial of power in the court and as such held invalid, but that is not presented in the instant case.

We pass now to more important considerations for which we have no exact precedent, since the statutes are new and their constitutionality has not been passed upon by any appellate court.

The defendants demand a jury trial on the issues of fact presented by this motion to punish them for contempt. This demand is made pursuant to chapter 299 of the Laws of 1935, in effect April 5, 1935, which amends the Penal Law (§ 600, subds. 4, 5) and adds a new section (753-a) to the Judiciary Law. So far as pertinent it reads as follows: " Notwithstanding any inconsistent provision of law, where the alleged contempt is punishable under section seven hundred fifty and/or section seven hundred fifty-three and arises out of any failure or refusal to obey any mandate of a court contained in or incidental to an injunction order granted by such court in any case involving or growing out of a labor dispute, no punishment, prescribed by either of such sections, shall be meted out except after a trial by jury to which the defendant shall be entitled as a matter of right; provided, however, that this section shall not apply to any alleged contempt of such an injunction order committed in the presence of the court."

The motion herein was submitted to the court for determination on July 19, 1935, and consequently the defendants' right to invoke the statute must be upheld unless there is merit to the plaintiffs' contention that the statute is invalid, or, if valid, is superseded and governed by the provisions of chapter 298 of the Laws of 1935, *effective September 1, 1935*, which in adding section 882-a to the Civil Practice Act employs language substantially similar to that above quoted. The only difference between the two statutes is the effective date, and in the absence of any contrary legislative intent the last statute (Laws of 1935, chap. 299) must be held controlling. (*Andear Amusement Corp.* v. *De Agostina*, 157 Misc. 331.)

The plaintiff attacks the constitutionality of chapter 299 of the Laws of 1935 on the following grounds: (1) The Legislature has impinged on the jurisdiction of the Supreme Court in violation of article VI, section 1, of the New York State Constitution: (2) the statute is violative of both the Federal and State Constitutions in that it involves (a) the taking of property without due process of law, and (b) special class legislation. These objections will be considered in the order stated.

(1) Article VI, section 1, of the New York State Constitution reads in part as follows: " The Supreme Court is continued with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or hereafter may be prescribed by law not inconsistent with this article."

Section 20 provides that " The testimony in equity cases shall be taken in like manner as in cases at law; and, except as herein otherwise provided, the Legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised." An excellent historical résumé of these provisions is furnished by the recent decision of the Appellate Division of this Department (*Matter of Brock*, 245 App. Div. 5): " In the Constitution of 1777, article XXXV, the common law of England and the acts of the Colonial Legislatures were declared to be the law, subject to alteration by the Legislature. The only limitation upon legislative power was in article XLI, which preserved the right of trial by jury, forbade attainder and declared that the Legislature at no time should institute any new court or courts other than those then existing, which included a Supreme Court for actions at law and the Court of Chancery for actions in equity. That Constitution did not create or continue the Supreme or Chancery Court, but treated them as existing by referring to the incumbents thereof. (*Matter of Steinway*, 159 N. Y. 250, 257.)

" In the Constitution of 1821, article VII, section 2, limitation of legislative power was again declared respecting trial by jury, and it was provided that ' no new court shall be instituted but such as shall proceed according to the course of the common law; except such courts of equity as the Legislature is herein authorized to establish.' (*Phillips* v. *Gorham*, 17 N. Y. 270, 272.) The Supreme and Chancery Courts thus were again treated as in the prior Constitution.

" In the unamended Constitution of 1846 (Art. VI, § 3) and the Amended Constitution of 1846 (Art. VI, § 6) it was declared there should be a Supreme Court ' having general jurisdiction in law and equity.' By article XIV, section 8, courts of chancery were abolished. To supersede the old Supreme Court, which was of statutory origin (1 Col. Laws, pp. 226–229, enacted May 6, 1691; *Matter of Steinway*, 159 N. Y. 250, 257), a new Supreme Court was authorized to be constituted, with law and equity jurisdiction. (Lincoln's Const. History, vol. 2, p. 217.) The distinction between actions in law and suits in equity was abolished and a single form of civil action authorized. (*Lattin* v. *McCarty*, 41 N. Y. 107–110.)

" In the 1894 Constitution, article VI, section 1, it was provided: ' The Supreme Court *is continued* with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or may be prescribed by law not inconsistent with this article.'

" Thus no limitation upon legislative power appears in any Constitution which would deprive that body of the power to con-

stitute a new medium or agency for official action within the existing Supreme Court as an aid thereto. On the contrary, constitutional recognition appears of the plenary power of the Legislature in this particular, as thus traced.

" The 1846 amended Constitution also provided (Art. VI, § 8), as did the unamended 1846 Const. (Art. VI, § 5), that the Legislature had power to ' alter and regulate the jurisdiction and proceedings in law and equity * * * heretofore exercised.' (*Wilcox* v. *Wilcox*, 14 N. Y. 575, 578.) This later appears in article VI, section 3, of the Constitution of 1894. Pursuant to amendment in 1925, it is now in article VI, section 20, in the following form: ' * * * Except as herein otherwise provided, the Legislature shall have the same power to *alter and regulate* the jurisdiction and proceedings in law and in equity that it has heretofore exercised.' "

In construing the 1846 Constitution it was held that the power reserved to the Legislature included the power to impose the necessity of a jury trial in all cases whether they be legal or equitable (*Phillips* v. *Gorham*, 17 N. Y. 270, 272.) Since that power existed under the 1846 Constitution it still exists today, for it has not been taken away or limited by any subsequent constitutional amendment, and it follows that the continued existence of that power must be read together with the provision that " the legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised " (Art. VI, § 20).

The statute under consideration does not attempt to oust the Supreme Court of jurisdiction to vindicate violations of its mandates by punishment for contempt. It simply effects a procedural change with respect to the fact-finding agency. The jury is as much a part of the Supreme Court as any justice thereof, and obviously the requirement that a jury rather than a justice shall resolve the factual disputes arising in contempt proceedings deprives the Supreme Court of nothing.

An argument similiar to that now made by this plaintiff was dealt with in *Penn Anthracite Mining Co.* v. *Anthracite Miners* (178 Atl. 291),* where the court said: "Another fallacy in appellant's argument is that the act of 1931 takes away from *the court* the right to punish for disobedience to its process. What is taken away is only the right of the *judge* whose order the respondent is accused of disobeying, *to determine unaided by a jury* the fact of disobedience. Appellant might as well say that because a state cannot execute a murderer until a jury pronounces the alleged murderer guilty, the state is deprived of the power to punish murderers. The word ' court ' and the word ' judge ' are not synonymous, and to require

* 318 Penn. St. 401.

a judge to share with a jury the administration of justice does not take away power from ' a court.' Originally the court was the king, and when that court spoke, it *was* the sovereign speaking. In this country no single official is sovereign and he can speak *for* the sovereign only so far as the sovereign people have authorized him so to do. In a homicide case, the trial judge *and* the jury constitute the court. 'A court is a tribunal organized according to law, * * * not an individual holding a judicial office.' (*People, etc.,* v. *Village of Haverstraw,* 151 N. Y. 75.) "

The Constitution contains no prohibition against the employment of a jury in contempt proceedings and no such prohibition may be implied by reason of any time-honored and well-crystallized public policy, for trial by jury in contempt proceedings " is as old as the best traditions of the common law." (37 Harvard Law Review, p. 1010, at p. 1042.) Jurisdiction is not impinged nor power attenuated; procedure and the means of enforcing an order or judgment are regulated. Fallacious, therefore, is the argument that the Supreme Court is being deprived of any inherent power.

" Novelty is no argument against constitutionality. Changing economic conditions, temporary or permanent, may make necessary or beneficial the right of public regulation." (*People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429, 446.)

In the history of jurisprudence age and theory amount to nothing. There may be found a useful analogy in the holding of the Supreme Court of the United States that the Clayton Act, which grants the right to a jury trial in contempt proceedings in a case where the contempt was not committed in the presence of the court, does not violate any inherent powers of the court. (*Michaelson* v. *United States,* 266 U. S. 42.) Here the statute expressly excludes from its application " any alleged contempt of such an injunction order committed in the presence of the court."

The argument that the statute under consideration attempts to deprive the plaintiff of property without due process of law is palpably unsound. The plaintiff acquired no property rights under its judgment of September 17, 1934. The judgment was *in personam* and the plaintiff's only right thereunder was to have its directions complied with, and in the event of non-compliance to resort to contempt proceedings. That same remedy is available to the plaintiff today. The fact that procedural changes have been made is of no consequence so long as the substantive right remains. (*People ex rel. Durham R. Corp.* v. *La Fetra,* 230 N. Y. 429.) In support of their contention plaintiffs urge *Ettor* v. *Tacoma* (228 U. S. 148, 155). But there the court said: " Statutes concerning remedies are such as relate to the course and mode of procedure to

enforce or defend a substantive right. Matters which belong to the remedy are subject to change and alteration, and even repeal, provided the legislation does not operate to impair a contract or deprive one of a vested property right."

It is urged finally that the statute considered is unconstitutional as special class legislation which denies the plaintiff equal protection of the laws. As was said in *People* v. *Beakes Dairy Co.* (222 N. Y. 416, 429): " There is no constitutional prohibition against class legislation as such if the classification is based on some reasonable ground, and is not essentially arbitrary. The statutes are replete with instances where the Legislature has selected a class of persons for regulation. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121, 137.) It is only where there is no real distinction on a substantial basis that it can be said that the equal protection of the laws is denied. (*Gulf, Col. & S. F. Ry.* v. *Ellis*, 165 U. S. 150; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400; *Lindsley* v. *Natural Car. Gas Co.*, 220 U. S. 61.) "

The social and economic forces underlying labor disputes with its resulting wide public interest, the plethora of legal research on the subject, the declaration by various Legislatures, including the Congress of the United States and the Legislature of this State, that there are abuses to be met in the existing procedure applicable to labor disputes, all negative any possible inference that legislation limited in its application to labor disputes is arbitrary, oppressive or capricious or based upon no real distinction.

One of the individual defendants (Borokow) not having been served, is not before the court. The other defendants are entitled, as a matter of right, to a jury trial. Proceed accordingly.