Argued September 30; reversed December 29, 1936;
rehearing denied March 9, 1937

## STARR *v.* LAUNDRY AND DRY CLEANING WORKERS' LOCAL UNION NO. 101 ET AL.

(63 P. (2d) 1104)

In Banc.

636

*Chris Boesen* and *B. A. Green,* both of Portland (Green, Tanner & Boesen, of Portland, on the brief), for appellants.

*J. N. Hart,* of Portland, for respondent.

KELLY, J. The question of the constitutionality of certain sections of the act of the Oregon legislature copied from the act of congress known as the Norris-LaGuardia Act is involved herein. The question whether the facts disclosed by the record show that this case grows out of a labor dispute as defined by the statute is also presented. The solution of these questions, viewed in the light of this record, determines whether injunctive relief should have been granted.

It is urged that the act in question, chapter 355, Laws of 1933, is unconstitutional and void because it deprives the employer of property without due process of law and grants immunities and privileges to one class which are withheld from others.

In support of this position, plaintiff-respondent cites *Adair v. U. S.,* 208 U. S. 161 (52 Law. Ed. 436, 28 S. Ct. Rep. 277, 13 Ann. Cas. 764) ; *Coppage v. Kansas,* 236 U. S. 1 (59 Law. Ed. 441, 35 S. Ct. Rep. 240, L. R. A. 1915C, 960) ; and *People v. Marcus,* 185 N. Y. 257 (77 N. E. 1073, 7 L. R. A. (N. S.) 282, 113 Am. St. Rep. 902, 7 Ann. Cas. 118). These three cases construe laws mak-

ing it a criminal offense for an employer to enter into a contract with an employee containing a clause to the effect that the employee will refrain from joining a labor union during the term of his employment. The question of striking by employees is not involved. Neither is the question of picketing nor the propriety or legality of statutory provisions prescribing procedure in cases wherein injunctive relief is sought.

To attempt to impute criminality to an act that is sanctioned by the constitution is obviously different from prescribing a special procedure to be followed to obtain injunctive relief in a special class of cases.

■ The courts generally and this court particularly have held that there is such a thing as peaceful picketing. The courts have also repeatedly held that under certain circumstances peaceful picketing is lawful. It is known too that for very obvious reasons organized labor more frequently and continuously engages in it than any other class. We find nothing objectionable in a statute prescribing a special procedure having for its object the prevention of unjustly precipitate, permanent injunctive restraint upon the exercise of this judicially approved lawful right.

■ In saying this, we must not be understood that picketing may be practiced merely to gratify a whim or caprice. Only when there is a reasonable ground for resorting to it, should the courts sanction it.

■ Nothing is better settled than the principle of freedom of contract; but this privilege like all others is subject to the right on the part of the public or any part thereof to disapprove and express disapproval of those contracts which reasonable persons condemn as subversive of the best interests of society. When such contracts adversely affect the welfare of the labor-

ing class as such the courts have held that the disapproval of that class may be manifested by peaceful picketing. We adhere to that holding.

Plaintiff also cites *Truax v. Corrigan*, 257 U. S. 312 (66 L. Ed. 254, 42 S. Ct. Rep. 124, 27 A. L. R. 375). This case treats the provisions of paragraph 1464 of the Revised Statutes of Arizona as denying the right of injunctive relief in cases involving labor disputes. Such a construction was given to the Arizona statute by the supreme court of Arizona. (See report of same case, 20 Ariz. 7 (176 P. 570), and report of *Truax v. Bisbee Local No. 380,* 19 Ariz. 379 (171 P. 121).)

In fact, the federal supreme court understood that the Arizona supreme court construed the Arizona statute to deny a remedy of any kind in cases involving a labor dispute. We quote from the opinion of the federal court:

"The opinion of the State Supreme Court in this case, if taken alone, seems to show that the statute grants complete immunity from civil or criminal action to the defendants, for it pronounces their acts lawful." *Truax v. Corrigan,* supra.

It is true that following the above excerpt, the opinion contains the statement that,—

"If, however, contrary to the construction which we put on the opinion of the Supreme Court of Arizona, it does not withhold from the plaintiffs all remedy for the wrongs they suffered, but only the equitable relief of injunction, there still remains the question whether they are thus denied the equal protection of the law."

In the case at bar, the controlling provisions of the statute in question, as we construe them, merely prescribed the procedure to be followed and do not purport to deny the right to injunctive relief. We refer to sections 7 to 9, inclusive, of said chapter 355, Oregon Laws 1933.

Plaintiff also cites *Opinion of the Justices,* 275 Mass. 580 (176 N. E. 649), and *Opinion of the Justices,* 86 N. H. 597 (166 Atl. 640). These two advisory opinions were elicited by resolution on the part of the respective legislative bodies of Massachusetts and New Hampshire and addressed to the justice of the supreme court of the states named respectively asking their opinion upon the constitutionality of proposed statutes like the Oregon statute in question.

■ We are impressed with the fact that these distinguished and learned justices sustained a different relationship than we do to the question in that it is a well-known canon that a serious question of the validity of proposed legislation should be resolved against the passage thereof, while, after legislation has been enacted by the legislative assembly, every reasonable intendment should be applied and every reasonable doubt should be resolved to uphold and sustain such legislation.

Intervening distance does not deter us from fully recognizing the deservedly high standing of the courts whose advisory opinions we are now discussing; but we are accountable to our own mental processes and, being so controlled, although with due deference to those who differ, we are unable to concur with the opinions mentioned to the extent of holding that the statutory provisions in question are unconstitutional, which merely prescribe the procedure to be observed in cases growing out of labor disputes wherein injunctive relief is sought.

We find this significant statement in the Massachusetts opinion which may have prompted the General Court of that state in 1935, to enact a statute contain-

ing procedural provisions very similar to the sections of the Oregon code here discussed. (Acts and Resolves Massachusetts, 1935, Chapter 407):

"In answering the question, we have considered only a general view of the proposed bill. It has not been examined in detail with reference to the questions that might be raised as to its several parts. We do not undertake to intimate how much of the bill, if dissociated from the dominating factors already mentioned, would be within the competency of the General Court to enact."

An equally significant pronouncement is found in the New Hampshire opinion,—

"Judged by the standard thus set, it is our opinion that an act denying to employers of labor any part of the full right accorded to others to resort to the courts for relief would be unconstitutional. Such is the purport of many of the provisions contained in sections three to nine of the proposed bill, and *to this extent* it would not become a valid law if enacted." (Italics supplied.)

It is worthy of note that thirteen states, including Oregon, have enacted statutes containing procedural provisions substantially the same as those of the Norris-LaGuardia Act. Besides the Oregon statute, we refer to Maryland, Washington, Pennsylvania, North Dakota, Louisiana, Minnesota, Indiana, Idaho, Colorado, Wisconsin, Massachusetts and New York: Laws of Maryland, 1935, Ch. 574, Sec. 70, p. 1294; Annual Pocket Part of Vol. 8, Rem. Rev. St. of Wash. 1936, p. 127, §§ 7612-7, Laws of 1933, Ex. Sess. p. 13; Cumulative 1935 Annual Pocket Part Pruden's Penn. St. Ann. Title 43, Ch. 7, § 203, p. 11; passed June 1931, 23 P. L. 929; Laws, N. D. 1935, Ch. 247, p. 350; 1935 Cumulative Annual Pocket Supp. Vol. 2, La. Gen. Statutes 1932 (Dart) p. 57; Mason's Minn. Stat., 1934 Supp. p. 383,

et seq.; Acts 1933, Ind. 78th Sess. Ch. 12, p. 28; 1930 Sess. Laws of Idaho, Ch. 216, p. 452, et seq.; Sess. Laws of Colorado, 1933, Ch. 59, p. 404, et seq.; Wisconsin Statutes, 1931, §§ 268.18 and 268.30, inclusive; Acts and Resolves, Mass. 1935, Ch. 407, p. 451, et seq.; Vol. 1, Laws of N. Y. 158th Sess. 1935, Ch. 477, p. 1051, et seq.

Procedure in cases for injunctive relief involving labor disputes, as distinguished from other cases, is also regulated by statute in Illinois, Utah and Wyoming: Smith-Hurd Ill. Rev. St. 1935, Chap. 48, p. 1566; Rev. Sts. Utah, 1933, p. 628, Title 49, Ch. 2; Sess. Laws, Wyoming, 1933, p. 31, Ch. 37.

We of the West dare not claim that the influence of any other thirteen states could compare in matters of human welfare with that of the glorious thirteen first comprising this government, from two of which the advisory opinions above mentioned emanate; but in all modesty we feel that when thirteen legislative assemblies, four of which share in the enviable distinction of being of the original thirteen states, speak with one voice in accord with congressional enactment governing procedure in labor disputes, even though most of the others so speaking are western, we, who are of a state among those last to be kissed goodnight by the beauty and glory of the sunset, ought not to close our eyes, dull our ears or dim our minds to the action of such a host of legislators. To us, it is persuasive that it is a reasonable classification, in providing a special procedure where injunctive relief is sought, to limit such special procedure to labor disputes between employers or their organizations and employees or their organizations. Members of the general public, dissociated from the realm of employer and employee, are controlled by different circumstances

than employees and employers, and this difference, in our opinion, is sufficiently distinct to warrant the legislature in omitting them from those affected by the special procedure prescribed.

■ In this case, we are not called upon to decide whether certain other provisions of said chapter 355 of Oregon Laws 1933 are constitutional or not. It is well settled that part of an act of the legislature may be upheld as valid and effective even though other parts of the same enactment are invalid because in conflict with constitutional restrictions.

■ At all times legislation, prescribing the procedure in cases brought to secure injunction, has been recognized as controlling upon the courts. We find support in reasons of public policy why the procedure in labor cases should be different from that to be followed in other cases.

We have found no federal court declaring the congressional act unconstitutional from which our 1933 statute was copied, although it has been before the courts on numerous occasions. In the recent case of *Levering & Garrigus Co. v. Morrin*, 71 Fed. (2d) 284, the circuit court of appeals in the second circuit held the act constitutional.

In the state courts, the constitutionality of acts substantially the same as the one under consideration has been upheld in the following cases: *Dehan v. Hotel and Restaurant Employees Etc. Local Union*, (La.) 159 So. 637; *American Furniture Co. v. I. B. & T. C. and H. of A. Etc.*, (Wis.) 268 N. W. 250; *Wisconsin State Federation v. Simplex Shoe Mfg. Co.*, 215 Wis. 623 (256 N. W. 56); *Fenske Bros. v. Upholsterers' International Union*,

258 Ill. 239 (193 N. E. 112, 97 A. L. R. 1318) ; *Kronowitz v. Shlansky,* 282 N. Y. S. 564 (156 Misc. 717), *Scofes v. Helmar,* 205 Ind. 596 (187 N. E. 662).

To avoid restatement and repetition in the consolidated cases of *Geo. B. Wallace Co., A. B. Smith Chevrolet Co.,* and *Wentworth & Irwin, Inc., v. International Association of Mechanics et al.,* post p. 652, wherein the opinion by Mr. Justice BELT is rendered contemporaneously herewith, we take occasion to say that in so far as sections 4 to 13 both inclusive of the act in question are applicable to the facts in the cases just mentioned, as well as to those disclosed in the record of the instant case, said sections are not in conflict with state or federal constitutional provisions.

On December 7, 1936, the supreme court of Washington by a divided court declared an act similar to the one under consideration to be unconstitutional as an unwarranted attempt to deprive a constitutionally created court of equitable jurisdiction expressly conferred by the constitution: *Blanchard v. Golden Age Brewing Co.,* 63 P. (2d) 397.

To the writer, the dissenting opinions in the Washington case declare the principles of law which should have been controlling, although no one has greater respect than he has for the learning and ability of the entire membership of that court. To these dissenting opinions, the writer deems it unnecessary to add anything except to suggest that while in the state of Washington the constitution expressly creates the superior courts and confers upon them equitable jurisdiction, in Oregon the circuit courts are not supported by any such express constitutional provisions, nor does the constitution expressly confer jurisdiction to issue injunctions upon any tribunal. The original Article VII

of the Oregon Constitution has been supplanted in this respect by the present Article VII, which continues the original Article VII in effect only until otherwise provided by law.

Upon the question whether this case grows out of a labor dispute, we have to consider the facts.

In August, 1934, in an attempt to organize the Laundry and Dry Cleaning Workers' Union Local No. 107, the secretary and business agent of the Laundry and Dry Cleaning Drivers' Union Local No. 358, which had theretofore been organized as a voluntary association affiliated with the American Federation of Labor, called at plaintiff's place of business, said business being a laundry and dry cleaning establishment, and left some circulars announcing a proposed union meeting at the labor temple on the following evening and inviting the employees of plaintiff to attend such meeting.

When plaintiff received these circulars, he advised his employees that, if any of them should attend that meeting, it would not be necessary for those so attending to return to his establishment. He also stated to his employees that he would have a representative at the meeting to ascertain and report whether any of them were there. One employee attended the meeting and was discharged by plaintiff.

Plaintiff's opposition to the proposed union caused its sponsors to interview plaintiff's employees at their homes without plaintiff's knowledge. Some of those, who joined the union, were notified by plaintiff that their services would be dispensed with as soon as other workers could be substituted in their places. Plaintiff testified that they were so treated for other reasons than their affiliation with the union. As we read the

record, plaintiff's opposition to his employees becoming members of the union, his action in discharging the employee, who attended its first meeting, and in notifying others, who joined, that their services would be dispensed with, as stated, and his failure, after being requested to do so, to assure those of his employees, who were members, that he would deal with the union in reference to working conditions and a scale of wages, precipitated the strike in suit. Some of the strikers testified to objectionable and unsatisfactory sanitary conditions at plaintiff's plant which they said they hoped to have corrected by and through the influence of the union.

■ Plaintiff insists that the strike of his striking employees was unlawful, (1) because the methods used by defendant union in obtaining members were unlawful; and (2) because the strike was called for an unlawful purpose, namely, forcing plaintiff to operate a closed shop.

Upon the first basis for declaring the strike unlawful, namely, the methods used by the defendant union in obtaining members, plaintiff cites *Longshore Printing Co. v. Howell,* 26 Or. 527 (38 P. 547, 28 L. R. A. 464, 46 Am. St. Rep. 640).

In that case, the decision was rendered upon a demurrer to the complaint. Nothing is alleged in that complaint with reference to the method used by the union in obtaining members. The complaint, among other things, does allege that about sixteen months after plaintiff had established itself in business, it ascertained that its employees were being interviewed by the defendants and their associates and that its business was being injuriously interfered with by them; that the plaintiff and its officers have heretofore re-

fused to submit to all the laws, rules and regulations of the union, or to permit the union to dictate the mode and manner in which it shall conduct its business, and for this reason the executive committee and the officers and members of the union combined and conspired to compel a compliance with such rules and regulations and a submission to the dictates of the union in that respect, upon pain of being boycotted in its business. The trial court sustained the demurrer to that complaint and this court affirmed the judgment of the trial court.

Plaintiff also cites *Hitchman Coal & Coke Co. v. Mitchell,* 245 U. S. 229 (38 S. Ct. Rep. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461). The doctrine of this case was modified by the Clayton Act as held in *American Steel Foundries v. Tri-City Central Trades Council et al,* 257 U. S. 184 (42 S. Ct. Rep. 72, 66 L. Ed. 189, 27 A. L. R. 360), §§ 49-901 to 49-906, inclusive, Oregon Code 1930, comprising chapter 346, Oregon Laws 1919, were copied from the Clayton Act; *Moreland Theatres v. M. P. Union,* 140 Or. 35, 42 (12 P. (2d) 333).

Plaintiff also cites *Interborough Rapid Transit Co. v. Lavin et al,* 247 N. Y. 65 (159 N. E. 863, 63 A. L. R. 188). This case recognizes and reaffirms the right of a labor organization to attempt to recruit its membership from employees of one who has forbidden his employees to affiliate with such organization, at least, if the prohibition is not a part of a contract for a definite term, even though it may involve termination of present employment and consequent disruption of a business organization; but it also holds that persons seeking to induce employees to affiliate with a labor organization cannot achieve their purpose through malicious falsehood or deceit, use force or intimida-

tion, or injure or deface the employer's property. While the testimony in the case at bar is somewhat contradictory, we think that it has not been shown that deceit, force or intimidation was employed by the union to secure membership on the part of plaintiff's employees, and it is not urged, nor could it be, that prior to the strike, plaintiff's property was injured or defaced in the union's attempt to persuade plaintiff's employees to become its members.

Plaintiff also cites *McMichael v. Atlanta Envelope Co.,* 151 Ga. 776 (108 S. E. 226, 26 A. L. R. 149). In its opinion in this case the Georgia court recognizes the right on the part of striking employees to employ such persuasion to induce others to join their ranks as appeals to the judgment, reason or sentiment, and leaves the mind free to act of its own volition. As stated, we think that before the strike, in its efforts to secure members, this character of persuasion was not exceeded in the case at bar.

Plaintiff also cites *Crouch v. Central Labor Council,* 134 Or. 612 (293 P. 729, 83 A. L. R. 193). In that case it is said that—

° "There was no trouble existing between Grouch and his employees. Defendants, therefore, had no right to interfere with their relation."

This case was decided before the enactment of the statute of 1933, Subdivision 3 of section 13 of which is as follows:

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employe." Subdiv. 3, § 13, Chap. 355, Oregon Laws 1933, p. 564.

■ As to the second ground upon which plaintiff bases his claim that the strike was unlawful, namely that it was called for the purpose of forcing plaintiff to operate a closed shop, this involves a question of fact upon which the testimony is contradictory. The form of contract submitted to plaintiff by the union included a closed shop provision. The plaintiff testified that he understood that such provision would not be modified or stricken. The officers of the union, however, testified that while they invariably include such provisions in every proposed contract submitted to an employer, hoping that the same will be accepted, nevertheless, in many, if not the majority, of cases in Portland those in the laundry and dry cleaning business, who entered into contractual relations with the union required the closed shop clause to be omitted from their contract. We think that the course, avoiding the closed shop provision, taken by many employers was likewise available to plaintiff and that upon the record before us the court would not be justified in finding that the strike was called to compel plaintiff to operate a closed shop.

For these reasons, we are unable to concur with plaintiff in his contention that the strike was unlawful.

■ Violence, intimidation and coercion in the conduct of a strike or in connection with picketing cannot be approved. Plaintiff urges that the picketing in this case should be enjoined because these unlawful features and practices attended it. We think that the wrongful and unlawful acts should be enjoined, unless upon notice the officers prevent their recurrence; but, believing the law to be that peaceful picketing in a case of bona fide labor disputes is not wrongful or unlawful we think, at most, in such a case as to the matter of

picketing the court may only prescribe the number of pickets, the place or places where they may be and the manner in which the picketing may rightfully and lawfully be conducted.

We think that any employee, not working for a definite term under an express agreement to refrain from doing so, has a right to join a labor union. When as in this case, an employer orders his employees to refrain from joining a union and discharges them as soon as, or very shortly after, hearing of their action in that regard, and thereafter, those of his employees demand of him an answer as to whether he will recognize the union in dealing with them, fixing a time, in this case, a very brief time, within which they require an answer and within which no answer is given followed by a strike on the part of the union employees, with some of the striking employees contending that their pay was inadequate and the sanitary conditions bad, such a situation constitutes a labor dispute.

The case at bar is distinguishable from the *United Electric Coal Companies v. Rice et al.,* 80 Fed. (2) 1, and *Lauf v. E. G. Skinner & Co.,* 82 Fed. (2d) 68. In those federal cases the dispute was between two rival unions, while in the case at bar, employees of plaintiff, as well as the union locals are disputants.

The case at bar is also distinguishable from *Safeway Stores, Inc., v. Retail Clerk's Union Local No. 148,* 184 Wash. 322 (51 P. (2d) 372). In the Washington case the court say:

"The vital, controlling question at issue here is plain and easy of solution. It in no way pertains to the relations between the appellant, a merchant, and its employees. For aught that appears, they are content and satisfied, among themselves. On the contrary, this

is a lawsuit between appellant and a third party—a labor union that does not include in its membership any employee of the appellant."

As stated, the case at bar is one wherein employees of plaintiff are on a strike.

Moreover, there are cases holding that it is not a necessary prerequisite to a labor dispute that there be a controversy between an employer and his employees. *Blumauer v. Portland M. P. M. O. P. Union*, 141 Or. 399 (17 P. (2d) 115); *American Furniture Co. v. I. B. of T. C. & H. of A. Chauffeurs, Teamsters & Helpers Local No. 200*, (Wis.) 268 N. W. 250; *Senn v. Tile Layers' Protective Union, Local No. 5*, (Wis.) 268 N. W. 270; *Miller Parlor Furniture Co. v. Furniture Workers' Industrial Union*, 8 Fed. Supp. 209; *Cinderella Theatre Co. v. Sign Writers' Local Union*, 6 Fed. Supp. 164.

■ Holding that sections 7–9 of chapter 355, 1933 Session Laws, are valid, constitutional and effective, the procedure therein prescribed should have been followed. Subdivision 5 of section 7 of said chapter prescribes that the hearing of testimony "shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property"; etc.

We find nothing to indicate that any such notice was prescribed by the court or given to such officers or either of them. We think the trial court should have observed this statutory rule of procedure. We feel that this court, too, is bound thereby.

The purpose of such notice is obvious. The officers may, upon receiving it, give such attention to the controversy that the objectionable conduct may be terminated before the time fixed for the hearing shall have arrived. It is a salutary provision and one that commends itself as a step toward rendering government by injunction unnecessary.

As stated, peaceful picketing has been approved by this court. It is labor's agent of defense against oppression. The acts of violence and interference with customers, engaging them in long discussions, following them, and attempting to prevent them from leaving their automobiles to enter plaintiff's place of business, are wrongful and unjustifiable. If such wrongful conduct cannot be prevented by the peace officers within the time fixed by the order of the court, injunctive relief should be accorded.

Until the statutory notice had been given to the officers named, no hearing upon the merits of plaintiff's demand for a permanent injunction should have been held and no permanent injunction issued.

This results in a reversal of the decree of the trial court. This cause is remanded for such further proceedings as may not be inconsistent herewith.

RAND, J., specially concurring.