## MARGOLIS v. GEM FACTORS CORP.
### No. 143, Docket 22542.

United States Court of Appeals
Second Circuit.

Argued Jan. 7, 1953.

Decided Feb. 4, 1953.

Isadore B. Hurwitz, New York City (Louis P. Rosenberg, Brooklyn, N. Y., on the brief), for plaintiff-appellant.

Louis J. Weinshenker, New York City (Weinshenker & Kenner, New York City, on the brief), for defendant-appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

804

CLARK, Circuit Judge.

The trustee in bankruptcy of Bri-Test Inc. brought this action in the district court to recover an allegedly preferential payment of $21,000 made to defendant by the bankrupt within four months of the filing of its Chapter XI, 11 U.S.C. § 701 et seq., petition. The amended complaint set forth two causes of action, the first to recover the preference under § 60 of the Bankruptcy Act, 11 U.S.C. § 96, and the second for the same relief under § 15 of the N. Y. Stock Corporation Law, McK.Consol. Laws, c. 59, applicable under Bankruptcy Act § 70, 11 U.S.C. § 110. Defendant's answer admitted receipt of the $21,000, but generally denied the other material allegations of the complaint.

Two pre-trial conferences formulated the issues to be tried. At the first conference the disputed issues on the first cause of action were narrowed to: (1) Was Bri-Test insolvent on July 10, 1950, the date of the $21,000 payment, and (2) did defendant have knowledge or reasonable cause to believe that Bri-Test was insolvent on that date? The issues raised by the second cause of action were formulated at the second conference in substance as follows: (1) Was the bankrupt insolvent, actual or imminent, in the sense of being unable to meet its obligations in due course, on the date in question; (2) was the $21,000 payment made with the intent of preferring defendant to other creditors; (3) did the payment result in such a preference; and (4) did defendant have notice or reasonable cause to believe that this payment would effect a preference?

At the close of plaintiff's case in a trial to a jury, defendant moved to dismiss the complaint on the merits for failure to establish a *prima facie* case on either cause of action. The court permitted plaintiff to introduce some further testimony and then, defendant having rested, granted defendant's motion without opinion. This ruling, from which plaintiff appeals, was error as to both causes of action.

There was surely sufficient evidence of Bri-Test's insolvency on July 10, 1950, to warrant submission of that issue to the jury. The schedules filed by the bankrupt with its petition on September 1, 1950, showed assets on that date of $88,525.00 as against liabilities of $285,665.41. Gould, the bankrupt's president, testified that his company had no assets on July 10 which were not reflected in the September 1 schedules, and that its liabilities on the earlier date might actually have been greater than those reported with the petition. Between July 10 and September 1, the bankrupt sustained only ordinary operating losses, the exact amount of which does not appear. Hence the hopelessly insolvent condition obtaining on September 1 might well have been found to exist in July.

A balance sheet prepared for the bankrupt indicated that on March 31, 1950, it was solvent to the extent of $27,364.66; but the accounts receivable, there stated at $317,744.72, consisted largely of amounts expected from unfilled orders, the bids for which were either never accepted or subsequently cancelled. The bankrupt, a manufacturing chemist producing waxes, polishes, soaps, and disinfectants, had hit upon this happy, if not haphazard, way of counting its chickens before they were hatched. During the summer of 1950, credits amounting to $294,514.02 were entered against these receivables to eliminate the fictitious items. Of this amount, $43,452.81 —substantially more than the March 31 surplus—had been credited by July 10. Moreover, Jacobs, an accountant who audited the bankrupt's books after its petition was filed, testified that Bri-Test would have been insolvent roughly to the extent of $72,800 on July 10, had the accounts receivable on that date accurately reflected the amounts then due the bankrupt. Despite Gould's testimony that he thought the company then solvent, the jury could certainly have found the fact to be otherwise on the basis of this evidence.

Plaintiff also presented sufficient evidence to require submission to the jury of the question whether defendant knew or had reasonable cause to believe that Bri-Test was insolvent when the $21,000 payment was made. The testimony shows that defendant, which had for many years been

discounting the bankrupt's accounts receivable, was well aware of its debtor's precarious financial condition. During the spring of 1950, it repeatedly demanded that old and stale accounts be made good and was informed that the necessary funds were not available. The bankrupt's very weak cash position was also brought home to defendant when it was several times called upon to cover the bankrupt's overdrafts. At the end of June Mrs. Gould, who together with her husband had personally guaranteed the bankrupt's debt to defendant, took the unusual step of deeding their home to this creditor to reduce the amount of their corporation's outstanding obligation. And on July 10, Bri-Test ultimately executed a chattel mortgage—for the first time in its existence— to raise the $21,000 paid to defendant, which was fully aware of the resort to this extraordinary expedient. Thus defendant was clearly on notice that all was not well with the bankrupt's finances. It must therefore be charged with notice of all facts which a reasonably diligent inquiry would have disclosed. Pender v. Chatham Phenix Nat. Bank & Trust Co., 2 Cir., 58 F.2d 968, 970; Grandison v. National Bank of Commerce of Rochester, 2 Cir., 231 F. 800, 809, certiorari denied 242 U.S. 644, 37 S.Ct. 213, 61 L.Ed. 542. So defendant apparently knew at the time it took the $21,000 payment that some of the accounts receivable were fictitious, and the jury could have found that appropriate inquiry would have bared the fact of Bri-Test's insolvency. Reliance on indications of solvency in the bankrupt's books would not necessarily protect defendant under those circumstances, particularly since the questionable item of accounts receivable was by far the largest asset on the March 31 balance sheet. See In re Kent's, Inc., D.C.Me., 9 F.Supp. 216, 217.

■ What is termed a second cause of action is clearly but another and an alternative ground for the same recovery, though under state law; see § 70, sub. e, of the Bankruptcy Act, 11 U.S.C. § 110, sub. e. Here the principal new issue is

whether the bankrupt made the $21,000 payment with the intent of giving a preference to defendant over other creditors; on this question, too, we think the evidence quite sufficient for submission to the jury. It is not necessary for a finding of intent to prefer that the bankrupt's officers knew their corporation to be insolvent at the time of the alleged preference. If financial conditions are such that bankruptcy is the "natural, probable and only foreseeable end," the officer making the payment will be charged with knowledge of its preferential effect. Dalziel v. Rosenfeld, 265 N. Y. 76, 191 N.E. 841. And, acting with such knowledge, he will be deemed to have intended the effect. Baker v. Emerson, 4 App.Div. 348, 38 N.Y.S. 576, 579; Van Schaick v. Title Guarantee & Trust Co., 252 App.Div. 188, 297 N.Y.S. 827, 843. So the evidence as to the bankrupt's condition in July, and Gould's knowledge of that condition, would have permitted the jury to find an intent to prefer the defendant.

■ The other elements of the second cause or ground of action are essentially similar to those of the first and require little further discussion. That the $21,000 payment actually had the effect of preferring defendant over Bri-Test's other creditors can hardly be doubted. This amount reduced the bankrupt's $116,000 debt to defendant by almost one-fifth, while the trustee was able to muster only $11,446.82 to meet unsecured claims of approximately $107,000. Indeed, defendant seems to have conceded this point, since it is not even included as a triable issue in the pre-trial order dealing with the first cause of action. On the evidence we have discussed, the jury might properly have found that the bankrupt on July 10 was unable to meet its obligations as they became due or that its insolvency in the equity sense was then imminent. And the jury might also have found that the defendant had reasonable cause to believe the payment would effect a preference.

The judgment is accordingly reversed, and the action is remanded for a new trial.