In the Matter of the Application of THE LONG ISLAND RAILROAD COMPANY, Petitioner, for Payment of Awards Made for Parcels Nos. 11, 13 and 16 on the Damage Map and in the Final Decree of the Supreme Court as to Damage and Benefit, in the Proceeding to Acquire Title to Eighth Avenue, from 50th Street to Seventh Avenue, in the Borough of Brooklyn, City of New York.

Supreme Court, Special Term, Kings County, March 16, 1940.

*Louis J. Carruthers*, for the petitioner.

*William C. Chanler, Corporation Counsel* [*Joseph F. Mulqueen, Jr., Assistant Corporation Counsel*, of counsel], for the City of New York.

LOCKWOOD, J.   The city moves to vacate an order of this court dated September 11, 1939, directing the comptroller to pay to petitioner, Long Island Railroad Company, awards of $6,311.57, which, with interest, would total over $19,000.

The original application resulting in the order now sought to be vacated was unopposed, but the order has not yet been complied with and the money has not been paid.

These awards for Damage Parcels 11, 13 and 16 are contained in the final report of commissioners confirmed by order of the Supreme Court dated September 14, 1904, and are made payable therein to New York, Brooklyn & Manhattan Beach Railway Company, Long Island Railroad Company, lessee, subject to two mortgages — one for $2,000,000 and another for $45,000,000.

Thereafter, on December 16, 1904, a warrant in the sum of $6,394.67, which represented the awards and interest then due, was drawn to the order of New York, Brooklyn & Manhattan Beach Railway Company, Long Island Railroad Company, lessee, and the Long Island Railroad Company was notified that the warrant would be ready for payment on December 20, 1904.

The same attorney appeared in the condemnation proceeding for both the New York, Brooklyn & Manhattan Beach Railway Company and Long Island Railroad Company. The two corporations had substantially the same officers and directors.

No claim was ever filed on behalf of the mortgagees. They failed to appear in the proceeding and they never notified the comptroller that they had any interest in, or claim against, the awards for the property taken.

Demand for payment was never made by the awardees, and on September 18, 1929, the warrant, which had never been called for, was canceled by the comptroller.

No steps were taken to enforce payment until about thirty-five years later when the Long Island Railroad Company applied to this court in June, 1939, for an order directing the comptroller to pay. It is the unopposed order entered upon this application which the city now seeks to vacate.

Section 44 of the Civil Practice Act provides: " A final judgment or decree for a sum of money or directing the payment of a sum of money, * * * is presumed to be paid and satisfied after the expiration of twenty years from the time when the party recovering it was first entitled to a mandate to enforce it. This presumption is conclusive, except as against a person, who within twenty years from that time makes a payment or acknowledges an indebtedness of some part of the amount recovered by the judgment or decree, or his heir or personal representative, or a person whom he otherwise represents."

The city and its officers lacked authority to waive the provisions of the Statute of Limitations contained in section 44 of the Civil

Practice Act. (*Matter of City of New York* [*Elm Street*], 239 N. Y. 220, 229; General City Law, art. 2-A, § 20, subd. 5.) If, by lapse of time, the petitioner railroad company has been deprived of its remedy to enforce payment of the debt, the order of September 11, 1939, should properly be vacated.

The only other question involved is whether the applicable New York City Charter provisions required the comptroller to pay into court the moneys awarded by the commissioners' final report because of the existence of adverse or conflicting claims. In that event, a trust character would be impressed upon the awards and the Statute of Limitations would be inoperative. (*Matter of City of New York* [*Rochester Ave.*], 241 App. Div. 614; affd., 264 N. Y. 607.)

Section 1002 of the 1901 Charter, in force when the final report of commissioners was confirmed in 1904, provided: " Whenever the owners and proprietors of any such lands, tenements, hereditaments and premises so to be taken for any of the purposes aforesaid or the party or parties, person or persons interested therein, or any, or either of them, the said owners, proprietors, parties or persons in whose favor any such sum or sums, or compensation shall be so reported, shall be under the age of twenty-one years, *non compos mentis,* or absent from the city of New York, and also in all cases where the name or names of the owner or owners, parties or persons entitled unto or interested in any lands, tenements, hereditaments, or premises that may be so taken for any of the purposes aforesaid, shall not be set forth or mentioned in the said report, or where the said owners, parties, or persons, respectively, being named therein, cannot upon diligent inquiry be found, it shall be the duty of the city to pay the sum or sums mentioned in the said report, payable, or that would be coming to such owners, proprietors, parties, and persons, respectively, into the said Supreme Court, to be secured, disposed of, and invested as the said court shall direct, and such payment shall be as valid and effectual, in all respects, as if made to the said owners, proprietors, parties, and persons, respectively, themselves, according to their just rights, as if they had been known and had all been present, of full age, and *compos mentis;* and in default of such payment the said city of New York shall be and remain liable for the amount of the said sums of money with lawful interest thereon from a day one year after the date upon which title vested in the city of New York, to the person or persons who may thereafter be found entitled to the same."

It will be noted that these Charter provisions made no mention of adverse or conflicting claims, and the city was not then required to pay awards into court in the event of such claims.

The petitioner and its lessor — the owners named in the final report — did not come within any of the groups specified in section 1002 of the 1901 Charter. They were not "under the age of twenty-one years" or "*non compos mentis*" or "absent from the city of New York." And they did not fall within the category of owners whose names were not "set forth or mentioned in the said report," or "cannot upon diligent inquiry be found." They were corporations which had actually appeared in the proceeding.

By chapter 606 of the Laws of 1915 section 1002 of the Charter was repealed and section 983 was enacted and added a new type of award which the city was required to pay into court, namely, "where there are adverse or conflicting claims to the money awarded as compensation."

The new section of the statute provided: "When an owner in whose favor an award shall have been made * * * is under legal disability, * * * or where there are adverse or conflicting claims to the money awarded as compensation, the city shall pay such award into the Supreme Court, * * * and in default of such payment into court the city of New York shall be and remain liable * * * to the person or persons who may thereafter be found entitled to the same."

The petitioner railroad company claims that (1) section 983 of the Charter, as enacted in 1915, and not section 1002 (in force from 1901 to 1915), is controlling, and (2) since the awards were made payable to both the New York, Brooklyn & Manhattan Beach Railway Company and Long Island Railroad Company, lessee, and were also made subject to the two mortgages, there existed adverse or conflicting claims within the meaning of section 983. It, therefore, argues that the city was required to pay the money into court and for its failure so to do remains liable, notwithstanding the Statute of Limitations contained in section 44 of the Civil Practice Act.

The language of section 983 of the Charter, effective in 1915, obligating the city to pay into court awards which are the subject of adverse or conflicting claims, looks to the future and not to the past. It is not retroactive and does not apply to awards in previously confirmed proceedings, for chapter 606 of the Laws of 1915 — the very statute which brought section 983 into being — expressly provided that the entire act, including, of course, section

983, was to be inapplicable to proceedings instituted and concluded under former statutes.

Section 3 of chapter 606 of the Laws of 1915 provided (p. 1937): " Proceedings heretofore instituted pursuant to title four of chapter seventeen of the Greater New York Charter shall be concluded in all respects as if this act had not been passed, and as to such proceedings the provisions of said title of said chapter as heretofore existing, shall be considered as remaining in force."

Even if statutory construction were needed to determine whether the 1915 amendment applied retroactively to previously confirmed proceedings, the ruling would be the same.

In *Weiler* v. *Dry Dock Savings Institution* (258 App. Div. 581) the question was whether section 234 of the Real Property Law, which declares void as against public policy agreements exempting lessors from liability for their own negligence, embraced contracts made prior to the enactment of the statute as well as contracts made subsequent thereto. The court said in holding that the provisions of section 234 of the Real Property Law were not retroactive (p. 582): " The language of the statute does not indicate a legislative attempt to have the act include agreements executed before the statute took effect. The words used relating to agreements exempting lessors from liability for negligence declare that ' Every covenant  *  *  *  *shall be deemed* to be void as against public policy and wholly unenforceable.' (Italics ours.) A statute using words importing futurity, such as ' shall be,' is regarded as prospective only. (*Dalziel* v. *Rosenfeld*, 265 N. Y. 76, 79; Book 1 McKinney's Consolidated Laws of New York, § 18.) The general rule is that statutes are to be construed as prospective only and that it takes a clear expression of the legislative purpose to justify a retroactive application. (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240; *Isola* v. *Weber*, 147 id. 329; *Union Pacific R. R.* v. *Laramie Stock Yards*, 231 U. S. 190; Endlich on the Interpretation of Statutes, §§ 271, 273.) In Endlich on the Interpretation of Statutes the rule is stated in the following language (at p. 367): ' It is chiefly where the enactment would prejudicially affect vested rights, or the legal character of past transactions, that the rule in question prevails. Every statute, it has been said, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect of transactions or considerations already past, must be presumed, out of respect to the Legislature, to be intended not to have a retrospective operation.' "

In *Matter of City of New York (East 149th St.)* (196 App. Div. 866; affd., 232 N. Y. 511) the court was required to decide whether the amendment in 1901 of section 1002 of the Charter adding the provision for penalty interest in the event an unknown owner's award was not paid into court as required by that section, was retroactively applicable to a final report confirmed in 1899. The Appellate Division held that the new provisions were inapplicable but that section 990 of the Charter, in force when the report was confirmed, was controlling, and said (pp. 872, 873): " The rights and liabilities of the parties became fixed when the order of confirmation was made by the court.   *   *   *   There was no provision of law by which interest upon an award to unknown owners could be allowed when the real owner ultimately asserted and proved his title."

Rules of construction do not favor retroactive operation of a statute. (McKinney, Statutes and Statutory Construction, book 1, § 17.) As to amendatory statutes, the new provisions apply only from the date of the enactment. (*Stevenson Brewing Co.* v. *Eastern Brewing Co.*, 22 App. Div. 523, 525; affd., 165 N. Y. 634.)

In *People ex rel. Wallaston Realty Co.* v. *Craig* (229 N. Y. 23) the final report of commissioners which was confirmed in 1905 made an award to one Duryea. In 1918 the petitioner, who had not appeared as claimant in the proceeding, sought to collect the award with interest to date of payment as provided in section 1002 of the Charter on the ground that the relator, not Duryea, was the true owner when the report was confirmed. The court held that the statute to be applied in ascertaining lawful penalty interest was the one in force when the default occurs, and since it was not shown that the award was made to one of the class of awardees specified in section 1002, interest ran for only six months.

In *Union Pacific R. R. Co.* v. *Laramie Stock Yards Co.* (231 U. S. 190) the court laid down the following rule as a guide for the construction of legislation (p. 199): " Construction, therefore, becomes necessary, and the first rule of construction is that legislation must be considered as addressed to the future, not to the past. The rule is one of obvious justice and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed. The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights or by which human action is regulated, unless such be ' the unequivocal and inflexible import of the terms and the manifest intention of the Legislature.' "

The weakness of petitioner's argument that section 983, effective in 1915, should be applied to awards confirmed in 1904, is apparent when the amendatory provisions of this section are further considered. Between 1904 and 1915 petitioner concedes there was no duty upon the city to pay the awards into court, for during those years the statute in force was section 1002 of the Charter, which failed to mention adverse or conflicting claims. Section 983 for the first time required the city to pay awards into court where there are adverse or conflicting claims to the money awarded, and in default thereof the city remains liable for interest from a date one year after the date of the final decree or the commissioners' report. When, under petitioner's theory, would the city's liability for interest begin? Would it be in 1905, one year after confirmation, and at a time when the statute did not require the city to pay the awards into court? Or would it be in 1915, when section 983 was adopted? Certainly, the Legislature in enacting section 983 never intended to saddle the city with liability for interest in proceedings long ago confirmed and covering a period during which section 1002 of the Charter was silent as to adverse or conflicting claims to awards and imposed no penalty against the city for a failure to pay such awards into court. Obviously, section 983 is inapplicable to previously confirmed proceedings.

And even if the provisions of section 983 of the Charter, as enacted in 1915, were deemed applicable to the present case, petitioner railroad company would be in no better position, for here there were no adverse or conflicting claims to the money awarded as compensation.

The mere existence of the mortgages did not constitute claims, adverse or otherwise. Mortgagees are owners within the meaning of the condemnation statute and are required to file claims if they choose to share in the award. Thus, in *Merriman* v. *City of New York* (227 N. Y. 279) the court said (p. 287): "It [the charter] leaves to the owners the right and the duty if they claim a legal or equitable interest in the award to present the same duly verified as by the charter provided."

The default of the mortgagees in the present case — their failure to urge claims — left the railroad companies, which were the designated owners, free to collect the awards, and there was no impediment to prevent payment by the city.

In *Matter of Sea Beach R. Co.* (148 N. Y. Supp. 1080; affd., 121 App. Div. 907; affd., 196 N. Y. 533) CRANE, J., said at Special Term (p. 1082): "The fact that the mortgagees made no such adverse claim is the exception to the general rule that the city should not pay one of two claimants."

The mere possibility of a claim or lien which is not proved or urged by its holder, is insufficient to constitute an adverse or conflicting claim to the award. In the *Merriman* case (*supra*) the court said (p. 289): " The question here involved was before the Supreme Court in a case entitled *Matter of Sea Beach Railway Co.*, and is reported in 148 N. Y. Supp. 1080 and the decision therein was affirmed on appeal to the Appellate Division (*Matter of Sea Beach Railway Co.*, 121 App. Div. 907); and on appeal to this court (*Matter of Sea Beach Railway Co.*, 196 N. Y. 533). In that case the railway company made application to the comptroller to pay to it an award for two pieces of real property taken from it pursuant to the city Charter for street purposes in the city of New York. The comptroller refused to pay the award on the ground that there was a mortgage of $650,000 on the property of the railroad company including the real property taken for street purposes. The trustee of the mortgage bondholders had made no claim for the amount of the award, neither had it formally waived or released the same. The court at Special Term held in substance that where a mortgagee of lands sought to be condemned for street purposes does not assert a claim to any part of the award and does not file a notice making claim thereto, the owner of the fee is entitled to receive payment of the award in full and the comptroller cannot refuse to pay the same to the owner of the fee because he has actual knowledge that a mortgage existed upon the real property taken at the time the fee thereof passed to the city. The case is in every respect similar to the one now before us."

In pointing out why the comptroller was under a duty to pay to a fee owner in the absence of a specific claim by the mortgagee, the court in the *Merriman* case (*supra*) said (p. 287): " A person having an interest in lands taken under the charter through holding a mortgage thereon might be willing to retain the lien on the lands other than those taken in the proceeding without asserting any claim to the award made as compensation for the real estate so taken. It is possible also that a mortgage appearing of record or by the evidence taken before the commissioners as outstanding might be paid after the commencement of the proceeding and the confirmation of the award, or the time when the person named in the report and order of confirmation demands the award."

It is readily understandable why the holders of the two mortgages in the instant proceeding, amounting to $47,000,000, which apparently covered all the railroad property, would not be interested in claiming the small awards made for the negligible amount of property here taken.

Nor does the fact that the awards were made payable to the New York, Brooklyn & Manhattan Beach Railway Company and the lessee Long Island Railroad Company mean that their claims to the compensation were adverse or conflicting. Substantially the same persons were officers and directors of the two companies and the same attorney represented both in the condemnation proceeding. Had there been adverse or conflicting interests between the two companies, it would have been improper for the same attorney to represent them. Moreover, the record in the proceeding fails to show any conflict of interest, nor was the court requested to apportion the awards or decide any question of priority or superiority of claims. If anything, there was an identity of interest rather than a conflict.

Petitioner, in support of its contention that the recital of the mortgages in the commissioners' report was alone sufficient to constitute adverse or conflicting claims to the awards, places great reliance upon the opinion of the court in *Matter of City of New York (East 29th St.)* (273 N. Y. 62). In that case Siebert, holder of a first mortgage which was recited in the final decree, sought to collect and have applied an award in satisfaction of a deficiency resulting from the foreclosure of the mortgage against the remaining premises. The main point in the case was whether the mortgagee first had to enter a deficiency judgment. The court held that the mere existence of the deficiency, even without entry of judgment, was sufficient to permit the mortgagee to collect the award. A secondary question was whether the city remained liable for interest for failure to pay the award into court pursuant to section 983 of the Charter. The court determined that the city remained liable for interest, giving as one reason (p. 67): " The city knew and the decree showed that there were conflicting claims to the award."

But in that case Siebert was an active participant in the condemnation arena. She filed a claim in the proceeding, proved her mortgage, and filed with the comptroller a demand or remonstrance against payment of the award to the persons named as owners in the decree.

In the instant proceeding the mortgagees never filed claims in the proceeding, never proved the mortgages, and never made any demand for payment of the award. Consequently, there were no claims by the mortgagees, adverse, conflicting or otherwise.

In recognizing the distinction between the *Siebert* case and the present situation, this court is mindful of Judge CRANE's statement in *Matter of Sea Beach Railway Co. (supra)*, where, in speaking

of the general rule that a mortgagee has a lien upon the award and a right to have his share ascertained and paid to him, said (p. 1081): "But even this general rule is apt to be misapplied unless the facts of the case in which it is expressed are also considered."

Here the complete absence of adverse or conflicting claims to the awards, even if section 983 of the Charter were deemed applicable, relieved the city from any obligation to pay the money into court. Accordingly, the determination of the present controversy is controlled by the ruling in *Matter of City of New York (Elm St.)* (239 N. Y. 220).

In that proceeding an award for property taken was made payable to the American Express Company in a final report of commissioners confirmed March 31, 1898. Thereafter, the necessary voucher and warrant were drawn by the city comptroller and the express company was notified that the warrant in payment of the award would be ready for delivery on February 9, 1899. The warrant was not called for and no demand for payment was made by the express company until May 31, 1921. The court held that (1) the commissioners' report as to awards was a final judgment within the meaning of the Statute of Limitations; (2) claimant had a right to make demand forthwith and the statute began to run on March 31, 1898; and (3) the relation of the claimant and the city was that of debtor and creditor. In ruling that the Statute of Limitations barred the right to payment, the court held (p. 228): "The singular anomaly is here presented of the refusal of the city to pay a just debt because it is in a position to defeat claimant's remedy. Ethical considerations may condemn its attitude. The beneficent purpose of the statute as expressed in the act of James I, ' for quieting of men's estates and avoiding of suits ' is not served. Yet the city authorities would have been remiss in their duty if they had recognized the natural obligation in this proceeding. They lacked authority to waive the provisions of the statute. Relief must be sought elsewhere. The Statute of Limitations does not pay the debt. It merely deprives claimant of its remedy. That it does effectually exclude claimant from the courts by denying remedial justice is too plain to permit us to allow good conscience to prevail or to permit particular instances to destroy the force of well-established rules of law."

The claim by petitioner that the tender of payment by the city in 1904 was insufficient and ineffectual to commence the running of the Statute of Limitations, is without force. In the *Elm Street* case (*supra*) the court held that the statute began to

run immediately upon the confirmation of the commissioners' report.

For the foregoing reasons, the city's motion to vacate the order of September 11, 1939, is granted, and the motion of Long Island Railroad Company for an order directing payment of the awards is denied.

Settle order on notice.