In the Matter of IRVING V. A. HUIE et al., Constituting the Board of Water Supply of the City of New York, Appellant, Relative to Acquiring Title to Real Estate for the City of New York, in the Counties of Sullivan and Orange. CORNELIUS McELLIGOTT et al., Respondents.

Third Department, April 29, 1959.

*Charles H. Tenney, Corporation Counsel (Seymour B. Quel, Theodore R. Lee* and *Francis T. Murray* of counsel), for appellant.

*Goldstein & Goldstein (Benjamin M. Goldstein* of counsel), for respondents.

HERLIHY, J. The Administrative Code of the City of New York provides under title K a means whereby the city, through its Board of Water Supply and its Board of Estimate, may acquire real property rights necessary to provide the city with an adequate water supply. The Water Supply Board conducts surveys to determine the best sources from which water may be supplied. A report is furnished the Board of Estimate and if found satisfactory a hearing is scheduled wherein interested parties may have a chance to voice approval or disapproval. Letters must be sent to the chairman and clerk of the Board of Supervisors of the county where the real estate to be acquired is situated at least eight days before the time named in the notice. (§§ K41–2.0, K41–3.0.)

A letter dated November 18, 1927, was sent to the Clerk of the Board of Supervisors of Sullivan County informing of a hearing concerning a proposed additional water supply from the headwaters of tributaries of the Rondout and Delaware

Rivers which eventually would affect respondents' rights. The chairman of the board did not receive a letter.

The code goes on to provide that a final map shall be made in quadruplicate, one copy to be filed with the county clerk in the affected county. (§ K41–3.0, subd. c.) Apparently this map need only provide a general description of the area to be affected. The map filed made no reference to the names of respondents nor was any parcel number given their premises.

Section K41–5.0 goes on to provide that after approval and filing of the final map the Board of Water Supply shall prepare six similar maps which shall present in detail the realty to be acquired. Property division lines shall be delineated, " and there shall be plainly indicated those parcels of which the fee, and over or through which parcels the right to use and occupy the same temporarily or in perpetuity, is to be acquired." Section K41–6.0 provides that one of these maps be filed with the county clerk of the affected county. Appellant states that such map was filed on October 19, 1950. However, the record shows that such map did not set forth the name of McElligott, nor was their parcel enumerated, marked or delineated. Neither were there property division lines so as to show the property.

The next step is the application for the appointment of commissioners of appraisal (§ K41–7.0). The application was made to the court for the appointment of commissioners for the Neversink Riparian *Utility* Section on October 25, 1950. The order was entered December 22, 1950, and filed with the Sullivan County Clerk on January 2, 1951. The oaths of office of the Commissioners of Appraisal were filed on January 10, 1951. At this point the city became seized in fee of the land described on the previously filed maps. (§ K41–11.0.) It is stated in the record that the proceeding was publicized in accordance with section K41–8.0 which provides that the Corporation Counsel shall give notice to the *City Record*, two New York City papers, two papers in the affected county and by posted handbills six weeks prior to the presentation of the petition praying for appointment of commissioners of appraisal. These publications were not attacked by respondents.

Thereafter on December 5, 1951, one of six additional general maps was approved by the Board of Estimate and appellant states it was filed with the Sullivan County Clerk and related to the Neversink Riparian Section No. 3 (the prior maps and action pursuant thereto referred to the Neversink Riparian *Utility* Section). On January 10, 1952, a notice of application for appointment of Commissioners of Appraisal was submitted.

On January 11, 1952, this application was publicized pursuant to section K41–8.0. On February 15, 1952 the petition praying for this appointment was filed. The order appointing commissioners was entered · on May 16, 1952 and the oaths of office were filed on May 29, 1952. Accordingly, title vested in the city. (§§ K41–11.0, K41–18.0.) The Sullivan County Clerk lists three maps filed with him since 1928. There was the map filed in 1928, a modification of that map filed in 1939 and a further map filed at a later, undisclosed date. Whether it was filed on October 19, 1950, in connection with the Neversink Riparian *Utility* Section proceeding or on December 5, 1951, pursuant to the Neversink Riparian Section No. 3 proceeding is not apparent. By an order dated March 28, 1956, entered in the Orange County Clerk's office and filed in the Sullivan County Clerk's office on April 3, 1956, Neversink Riparian Sections 3, 4 and 5 were consolidated.

The claim of the McElligotts was received by the Corporation Counsel's office on July 18, 1955. A hearing at which some testimony was given was had on October 31, 1956 before the commissioners. An adjournment was taken to November 19, 1956. On November 13, 1956, respondents' attorney was informed that the commissioners would not continue to hear the case on the ground that the claim was filed beyond the three-year limitation period. The application for the order under consideration was then made by respondents.

Appellant contends that the proper remedy is an article 78 proceeding. The power of the Supreme Court under this title is defined in section K41–24.0.

Justice Bookstein granted the motion and ordered the hearing resumed. He stated that the city had waived the defense of the Statute of Limitations by entertaining the hearings in the first instance.

The respondents have questioned the noncompliance of the appellants with the statutory procedure under title K. Whether the failure (if any) to follow the procedure has tolled the Statute of Limitations is a matter which cannot be decided upon the affidavits here submitted. However, the city cannot waive, as found by the lower court, the defense of the statute. (*General City Law*, § 20, subd. 5; *Matter of Long Is. R. R. Co.*, 174 Misc. 1037, affd. 261 App. Div. 914; *Diehl* v. *City of Lackawanna*, 233 App. Div. 348, 349.)

We are unable to determine from this record as to whether notice was given — if so, if it was sufficient — to the respondents. The attorneys for McElligott contend that the names of the respondents did not appear in any of the published advertisements, that there is a dispute as to what real property was

owned by McElligott at the time of the taking; the maps or lack thereof is challenged, together with other alleged procedural defects.

*Matter of Rochester Elec. Ry. Co.* (123 N. Y. 351) concerns the authority of the railroad to take additional lands for its purposes not shown on a prior map. In denying the contention of the railroad that a map filed upon a prior proceeding was sufficient, the court said (p. 362): " For the validity and force of such a proceeding it is essential that all the steps pointed out by the general statute should be strictly followed. It may be that in this particular case no prejudice would be worked by the failure to make and file a map, but the question is not of the particular necessity, but is one which goes to the foundation of the right of petitioner to maintain the proceeding. Where it is sought, by resort to the special proceeding authorized by the statute, to take lands, *in invitum* the owner, they must be followed strictly, or they are unavailing. It is only when the steps are all taken, which the sovereign power has prescribed, that title to the private property is transferred from its owner. The rule is too familiar to require discussion at this day that a statute authority, in derogation of the common law, to divest the title of one must be strictly pursued and all prescribed requirements strictly observed and conformed to, or it will be ineffectual for the purpose."

And again the court said (p. 363): " The rule is a salutary one, and should be respected * * * for its absoluteness under the statute." (See, also, *Matter of City of New York*, 212 N. Y. 538, 544; *Walker* v. *City of Hutchinson*, 352 U. S. 112.)

It should be noted we disapprove of the practice in orders to include " and all others similarly situated " as being vague and indefinite. (*Matter of Huie* [*Neilson*], 6 A D 2d 837, 838.)

No claim has been filed when the matter was before the Special Term in favor of the estate of Mabel Burns and therefore no determination could be made for or against the estate.

From the present record, based entirely upon affidavits, we are unable to determine the rights of the respective parties. In compliance with section K41–24.0 the matter is referred to the Special Term for a determination of the legal and factual issues, other than damages. No satisfactory result could be accomplished by the direction of the Special Term that it be referred back to the Commissioners of Appraisal.

Accordingly, the order of the Special Term should be reversed and the matter remitted to the Special Term to determine the rights of the respective parties and without costs.

604

Foster, P. J., Bergan, Coon and Gibson, JJ., concur.

Order of the Special Term reversed, on the law and the facts, and the matter remitted to the Special Term to determine the rights of the respective parties, without costs.